Present:  All the Justices

THOMAS EDWARD PATTEN, III, ADMINISTRATOR
OF THE ESTATE OF MAURA K. PATTEN

v.  Record No. 002865   OPINION BY JUSTICE BARBARA MILANO KEENAN
                                          November 2, 2001
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF STAUNTON
                   Humes J. Franklin, Jr., Judge


     In this appeal, we consider an issue of sovereign immunity

arising from the trial court's dismissal of a wrongful death

action under an exception in the Virginia Tort Claims Act, Code

§§ 8.01-195.1 through -195.9 (the Act).

     Thomas E. Patten, III, administrator of the estate of Maura

K. Patten (the decedent), filed a motion for judgment against

the Commonwealth and certain of its employees alleging, among

other things, that based on their negligence, the decedent died

while she was a patient at Western State Hospital (Western

State).[1]  Western State is a residential psychiatric facility

operated by the Virginia Department of Mental Health, Mental

Retardation and Substance Abuse Services, an agency of the

Commonwealth.

     Patten alleged that employees of Western State failed to

provide adequate medical treatment to the decedent, which

_____

     [1]The individual defendants were later dismissed from the
action without prejudice by an order of nonsuit.

resulted in her death.  On the date of her death, the decedent was being held at Western State pursuant to an April 1997 "Certification and Order for Involuntary Admission to a Public or Licensed Private Facility" (the commitment order).  The commitment order, issued by a special justice for the City of Staunton, stated in relevant part:

> To the sheriff or other authorized officer of said county or city and to the director of Western State Hospital . . . [The decedent] [h]as . . . proved to be so seriously mentally ill as to be substantially unable to care for [her]self. . . . The alternatives to involuntary hospitalization and treatment were investigated and were deemed unsuitable.  I have found that there is no less restrictive alternative to involuntary hospitalization and treatment in this case.  I therefore, command you, the said sheriff, other authorized officer or responsible person, to make provision for the suitable and proper care of the person named in the foregoing petition and to deliver such person to the director of Western State Hospital . . . for involuntary hospitalization and treatment not to exceed 180 days from this date.  Furthermore, if admission is denied pursuant to §§ 37.1-68 or 37.1-70, you are hereby authorized to return [the decedent] to this jurisdiction.

According to the motion for judgment, the decedent suffered from chronic undifferentiated schizophrenia and had been involuntarily committed to Western State on a continuous basis from February 1991 until her death in July 1997.  In addition to schizophrenia, the decedent had a known history of obesity and chronic obstructive pulmonary disease.  As a result of changes in the decedent's anti-psychotic medication, she experienced a large increase in weight, which adversely affected her

2

cardiovascular system. In November 1996, a medical evaluation determined that the decedent had an "above average" risk for cardiac disease associated with her use of one of her medications.

The decedent's dosage of this drug was later reduced and an additional drug was added to her daily medications. About a month later, the decedent informed her physicians at Western State that she "did not feel well" when taking her medications.

On July 2, 1997, the decedent called some family members and friends and complained that she "felt like" she was dying. The next day, Margaret Keller, the decedent's sister, called officials at Western State to discuss various concerns regarding the decedent's worsening condition. An employee of Western State indicated that she would request a full medical evaluation of the decedent after the July 4th holiday weekend. The decedent died on July 7, 1997. From July 3, 1997 to July 7, 1997, the only information entered in the decedent's medical chart were notations of medications administered to her. An autopsy report stated that the cause of her death was "coronary insufficiency due to coronary atherosclerosis and cardiomegaly due to hypertension."

In response to Patten's motion for judgment, the Commonwealth filed a plea of sovereign immunity. The Commonwealth relied on Code § 8.01-195.3(4), which provides an

exception to the Commonwealth's limited waiver of immunity for tort claims "based upon an act or omission of an officer, agent or employee of any agency of government in the execution of a lawful order of any court."  The Commonwealth asserted that the acts alleged in Patten's motion for judgment were taken in the execution of such an order.

The trial court sustained the Commonwealth's plea of sovereign immunity and dismissed Patten's motion for judgment with prejudice.  Patten appeals from the trial court's judgment.

Patten argues that the employees of Western State were not acting pursuant to the execution of a lawful court order when they treated the decedent.  Patten contends that the commitment order did not require Western State to admit the decedent, and that its only mandate was directed to the sheriff of the City of Staunton.  According to Patten, the director of Western State was not ordered to take any action, but had discretion to decide whether to admit the decedent to that facility.

In response, the Commonwealth asserts that this appeal is controlled by our decision in Baumgardner v. Southwestern Virginia Mental Health Institute, 247 Va. 486, 442 S.E.2d 400 (1994), and contends that the acts and omissions of the Western State employees occurred during the execution of a lawful court order.  Thus, the Commonwealth asserts that under Code § 8.01-

4

195.3(4), it is immune from liability for the alleged conduct of its employees.  We agree with the Commonwealth.

In the absence of express statutory or constitutional provisions waiving the Commonwealth's immunity, the Commonwealth and its agencies are immune from liability for the tortious acts or omissions of their agents and employees.  Melanson v. Commonwealth, 261 Va. 178, 181, 539 S.E.2d 433, 434 (2001); Baumgardner, 247 Va. at 489, 442 S.E.2d at 401; VEPCO v. Hampton Red. Authority, 217 Va. 30, 32, 225 S.E.2d 364, 367 (1976).  In 1981, the General Assembly stated in the Act an express, limited waiver of the Commonwealth's immunity from tort claims.  Melanson, 261 Va. at 181, 539 S.E.2d at 434; Baumgardner, 247 Va. at 489, 442 S.E.2d at 402; see Commonwealth v. Coolidge, 237 Va. 621, 623, 379 S.E.2d 338, 340 (1989).  Because the Act is a statute in derogation of the common law, its limited waiver of immunity must be strictly construed.  Melanson, 261 Va. at 181, 539 S.E.2d at 434; Halberstam v. Commonwealth, 251 Va. 248, 250-51, 467 S.E.2d 783, 784 (1996); Baumgardner, 247 Va. at 489, 442 S.E.2d at 402.

The present appeal, which requires us to apply the provisions of Code § 8.01-195.3(4), is controlled by our decision in Baumgardner.  There, we held that the "court order" exception of Code § 8.01-195.3(4) applied to a wrongful death action against the Commonwealth in which the plaintiff's

5

decedent was admitted to a mental health institute operated by an agency of the Commonwealth. She was placed in "isolation" in a holding cell in the mental health institute and later died from a cardiac arrhythmia. Id. at 488, 442 S.E.2d at 401. The plaintiff alleged that the decedent's death was caused by the negligence of certain employees acting within the scope of their employment.

The admission order, issued by a general district court, ordered the director of the mental health institute:

> [T]o detain said patient for a maximum of 48 hours from time of admission to his/her hearing . . . . The [patient] may also be transported to such other facility as may be necessary to obtain emergency medical evaluation or treatment prior to placement in the hospital. The institution and examining physician may provide (only emergency) medical and psychiatric services pursuant to this order. The patient may not be released prior to the expiration of such period except by order of court.

Id.

We held that the plain language of Code § 8.01-195.3(4) barred the plaintiff's tort claim because the alleged acts and omissions of the institute's employees occurred in the execution of a lawful court order. Id. at 489, 442 S.E.2d at 402. Under the present facts, we likewise conclude that Patten's motion for judgment is barred under Code § 8.01-195.3(4). The decedent was involuntarily admitted to Western State pursuant to the commitment order, which authorized "the director of Western

6

State" to admit the decedent for the purpose of "involuntary hospitalization and treatment" for a period "not to exceed 180 days."

All the acts or omissions alleged by Patten occurred while the employees of Western State were engaged in the execution of this order for the involuntary hospitalization and treatment of the decedent.[2] The term "court order," within the meaning of Code § 8.01-195.3(4), includes both mandatory and discretionary acts authorized by that order. As we explained in Baumgardner, "Code § 8.01-195.3(4) does not exclude discretionary acts from its scope; instead, it specifically encompasses any claim that is based upon acts or omissions occurring in the execution of a lawful court order." Id. at 490, 442 S.E.2d at 402. Thus, to the extent that Patten's motion for judgment is based on the performance or omission of discretionary acts, those acts are not removed from the scope of Code § 8.01-195.3(4).

We also find no merit in Patten's argument that the commitment order did not require that the director of Western

---

[2] The commitment order directed this involuntary hospitalization and treatment, subject to two exceptions that are not relevant here. The order provided that the director of Western State may deny admission pursuant to Code §§ 37.1-68 and -70. However, Patten does not claim that the decedent's admission papers did not substantially conform to the law, as required by Code § 37.1-68. Likewise, Patten does not allege that the decedent was not mentally ill. Therefore, the director's discretion under Code § 37.1-70 to deny admission to such a person has no bearing on our analysis.

State take any action regarding the decedent.  Such a construction would render meaningless the order's language directing the "involuntary hospitalization and treatment [of the decedent] not to exceed 180 days."

Finally, our conclusion that Code § 8.01-195.3(4) bars the present action is not affected by our decision in Whitley v. Commonwealth, 260 Va. 482, 538 S.E.2d 296 (2000).  There, we considered whether the "court order" exception in Code § 8.01-195.3(4) barred a wrongful death action against the Commonwealth and certain of its employees based on a claim that the decedent received inadequate medical treatment while incarcerated at a state correctional facility.  Id. at 486, 538 S.E.2d at 297-98.  The order at issue directed that the decedent be incarcerated, and did not provide that he be given medical care.  Id. at 495, 538 S.E.2d at 303.

We held that the employees giving medical care to the decedent were not performing acts "in the execution of a lawful order of any court," as contemplated by Code § 8.01-195.3(4), but merely were providing medical care to the decedent because he was an inmate at the correctional facility.  Id. at 495-96, 538 S.E.2d at 303.  Thus, unlike the acts alleged by Patten, the acts alleged in Whitley were outside the scope of the statutory exception.

8

For these reasons, we will affirm the trial court's judgment.

Affirmed.