# CIRCUIT COURT OF THE CITY OF ALEXANDRIA

Catholic Diocese
of Arlington, Virginia

v.

Commonwealth Transportation
Commissioner et al.

## Case No. CL05001501

BY JUDGE JOHN E. KLOCH

September 18, 2007

This case raises the question whether the State of Maryland is immune from liability in this Court for damage to Virginia property caused by construction activities undertaken as part of the Woodrow Wilson Bridge Project ("Bridge Project"), a seven and a half mile Capital Beltway reconstruction/rehabilitation project that begins in Maryland and terminates in Alexandria, Virginia. The Bridge Project is a federally funded collaboration between the United States Department of Transportation, the Federal Highway Administration, the State of Maryland, the District of Columbia, and the Commonwealth of Virginia. The centerpiece of the Bridge Project, which includes upgrades to the approach roadways and related interchanges in Maryland and Virginia, is replacement of the existing Woodrow Wilson Bridge with two new six-lane structures.

It is that portion of the Bridge Project that gives rise to this case. Plaintiff owns and operates the St. Mary's School and Cemetery in Alexandria and filed suit in this Court seeking damages from the Virginia Department of Transportation, the State of Maryland, and private contractors working on the

Bridge Project. Among other things, Plaintiff alleges that pile driving and other construction projects undertaken in connection with the Bridge Project have damaged its property and that those actions are tantamount to a private nuisance.

Defendants filed demurrers and pleas in bar in response to Plaintiff's amended complaint, and this Court took Maryland's special plea of sovereign immunity under advisement after oral argument on August 22, 2007. For the following reasons, that special plea is granted in part.

As a threshold matter, it is well settled that Maryland is not as a matter of federal constitutional law entitled to sovereign immunity from suit in Virginia courts for torts committed in Virginia. *See Nevada v. Hall*, 440 U.S. 410, 426, 99 S. Ct. 1182, 59 L. Ed. 2d 416 (1979). Relying on the Commonwealth's recent amicus brief to the U.S. Supreme Court in *Montana Board of Investments v. Deutsche Bank Securities, Inc.*, No. 06-291, cert. denied 127 S. Ct. 832, 166 L. Ed. 2d 665 (Dec. 11, 2006), Maryland presents a spirited argument that *Nevada v. Hall* should be overruled. Whatever the merits of that argument and Maryland may well be right that *Hall* would not come out the same way today as it did in 1979, this Court is bound by that decision until the Supreme Court tells it otherwise. *See Agostini v. Felton*, 521 U.S. 203, 237, 117 S. Ct. 1997, 138 L. Ed. 2d 391 (1997) ("[I]f a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions.")

Nonetheless, *Hall* does not necessarily render Maryland subject to suit in this Court. Instead, this Court remains free to heed *Hall*'s suggestion that it is "wise policy, as a matter of harmonious interstate relations, for states to accord each other immunity or to respect any established limits on liability." *Hall*, 440 U.S. at 426. Thus, as a matter of comity and in the interest of interstate cooperation, *Hall* permits the Commonwealth to extend to Maryland the same protections that Maryland would enjoy in her own courts of law.

Although I have found no Virginia case directly on point, under the unique circumstances presented here, I believe this case warrants the exercise of that constitutionally authorized discretion. The Bridge Project is a collaborative, interstate venture intended to benefit the people of Virginia, Maryland, and the District of Columbia, as well as those traveling through these states in transit to other parts of the country. Given the Bridge Project's interstate character, cooperation between Maryland and Virginia is essential to the success of the enterprise. Were the tables turned and Virginia facing suit in a Maryland court for its work on this joint venture, I have confidence that

Maryland's courts would likewise afford Virginia sovereign immunity as a matter of comity. Although the Supreme Court has cautioned that mere reciprocity is not the test for recognition of rights acquired under foreign law, *Frye v. Commonwealth*, 231 Va. 370, 370, 345 S.E.2d 267 (1986), extending respect to a fellow sovereign for actions undertaken in furtherance of a joint collaboration like this one is a worthy goal.

For the foregoing reasons, I therefore hold that as a matter of comity, Maryland is immune from suit in this Court to the same extent as it would be immune in its own courts.

## December 18, 2007

The plaintiff, owner and operator of the St. Mary's School and Cemetery in Alexandria, filed this action to recover damages from the Virginia Department of Transportation, the State of Maryland, and private contractors working on the Wilson Bridge Project. The plaintiff's amended motion for judgment asserts two counts against the Commonwealth Transportation Commissioner ("Commissioner"): a declaratory judgment action pursuant to Virginia Code § 8.01-187 and a common law action to directly enforce the takings clause of Article I, § 11, of the Constitution of Virginia.

Following oral argument on November 28, 2007, this Court sustained the Commissioner's motion to dismiss Count II of the plaintiff's amended complaint. In a case of first impression, the Court held that Virginia Code § 8.01-187 provides the exclusive mechanism to obtain just compensation from the Commonwealth for damage to private property under Article I, § 11, of the Virginia Constitution. *Cf. Chaffinch v. C. & P. Tel. Co.*, 227 Va. 68, 73, 313 S.E.2d 376 (1984) (holding that "[a] statutory remedy does not preempt common law remedies against a *non-sovereign* entity vested with the power of eminent domain unless the statute, expressly or by necessary implication, so provides"). Because of that ruling, this case will proceed against the Commissioner under the statutory count only. By motion filed December 4, 2007, the plaintiff requested a jury trial on *all* issues presented in Count I. In the alternative, it asks this Court to reconsider the November 28, 2007, ruling on the grounds that it would have been entitled to a jury trial on the dismissed Count II. For the following reasons, both requests are hereby denied.

Two general principles guide the Court's analysis. First, in the absence of a waiver, the Commonwealth is immune from actions for damages and from suits in equity to compel or restrain governmental action. *See Afzall v. Commonwealth*, 273 Va. 226, 639 S.E.2d 279 (2007); and second, where the Commonwealth has waived its immunity, its waiver must be narrowly

construed. *See Rector & Visitors of the Univ. of Va. v. Carter*, 267 Va. 242, 244, 591 S.E.2d 76 (2004); *Patten v. Commonwealth*, 262 Va. 654, 658, 553 S.E.2d 517 (2001).

According to the Virginia Supreme Court, Art. I, § 11, of the Virginia Constitution is precisely such a waiver in that it permits individuals to sue the sovereign for violations of the Just Compensation Clause. It thereby abrogates the Commonwealth's sovereign immunity from inverse condemnation claims like the one at issue in this case. But because the Commonwealth can be sued only by its own consent, the Commonwealth is entitled to structure the terms of its consent however it sees fit, including limiting the remedies available and the manner in which suits may proceed. To that end, § 8.01-187 sets forth the specific parameters under which the Commonwealth has consented to suits like the one at issue here, including the circumstances that give right to a trial by jury:

> Whenever it is determined in a declaratory judgment proceeding that a person's property has been taken or damaged within the meaning of Article I, Section 11, of the Constitution of Virginia and compensation has not been paid or any action taken to determine the compensation within sixty days following the entry of such judgment, order, or decree, *the court which entered the order or decree may, upon motion of such person after reasonable notice to the adverse party, enter a further order appointing condemnation jurors to determine the compensation.* The appointment of condemnation jurors and all proceedings thereafter shall be governed by the procedure prescribed for the condemning authority.

Virginia Code § 8.01-187 (emphasis added).

By its plain terms, then, § 8.01-187 empowers the court to appoint a jury (but does not require the court appoint a jury) *only* in the event of an antecedent declaratory judgment that there has been a taking and then *only* if the parties have not been able to negotiate a damages award. The statute also makes clear that the function of the "condemnation jurors" is to determine the amount of compensation that is just, not to determine liability in the first instance. In other words, the statute makes clear that there is no *right* to a jury at all, much less that there is a right to a jury on the question of liability. Had the General Assembly intended to provide a general jury trial right in inverse condemnation suits, it could have done so. But it did not. The plaintiff's motion for a jury trial on the preliminary issue of whether its property has been damaged within the meaning of the just compensation clause is therefore denied.

In its request for alternative relief, the plaintiff argues that denial deprives it of a constitutional right to a jury trial. That argument necessarily presupposes that there is an independent constitutional right to a jury trial in an inverse condemnation action *against the Commonwealth*. For the reasons set forth above, the Court disagrees with that proposition and thus respectfully disagrees with the contrary conclusion reached by the Circuit Court of Frederick County in *Costello v. Frederick County Sanitation Auth.*, 49 Va. Cir. 41, 43 (1999). Because this Court has no power to effect a more expansive waiver of immunity than provided for by the Commonwealth itself and because the plaintiff has asserted no positive jury trial right as against the sovereign, this action will proceed against the Commonwealth on the Commonwealth's terms, pursuant to the plain meaning of § 8.01-187.