COURT OF APPEALS OF VIRGINIA


Present:   Judges Annunziata, Bumgardner and Frank
Argued at Chesapeake, Virginia


SHARON A. SMITH
                                                        OPINION BY
v.      Record No. 0161-03-1          JUDGE RUDOLPH BUMGARDNER, III
                                                   DECEMBER 9, 2003
HAROLD E. SMITH, JR.


           FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
                         A. Joseph Canada, Jr., Judge

             Barry Randolph Koch (Inman & Strickler, P.L.C., on briefs), for
             appellant.

             Megan E. Burns (Stephen G. Test; Williams Mullen, on brief), for
             appellee.


        Harold E. Smith, Jr. petitioned to terminate his support obligation because his former

wife was cohabiting with another person.  The trial court terminated support because the parties

merged their support contract into the final decree.  It concluded, "the agreement ceased to exist

as a separate contract immune from court interference."  The wife contends merger did not

nullify the contractual nature of her rights arising from the agreement and the trial court could

not eliminate her contracted right to spousal support.[1]  We reverse because merger did not make

the contract subject to judicial modification.

        The parties were divorced January 4, 1990.  Their property settlement agreement, dated

August 25, 1989, stated that spousal support would "terminate only in the events of Wife's

_____

        [1] The wife also maintains the trial court may not constitutionally apply the statutory
changes to Code § 20-109(A) adopted in 1997 to a 1989 contract.  Based on our decision, we
need not address this issue.  Similarly, we do not address the husband's objection to the date set
for terminating support.

death, Husband's death or Wife's remarriage." The final decree "affirmed, ratified, and incorporated" the agreement and ordered compliance with its terms.[2] The husband filed the petition to terminate support in 2001 after statutory amendments authorized termination of support upon cohabitation. The wife conceded she cohabited with another and the agreement merged into the final decree.

Code § 20-109(A) mandates termination of spousal support upon proof of habitual cohabitation unless a stipulation or contract provides otherwise. Rubio v. Rubio, 36 Va. App. 248, 549 S.E.2d 610 (2001), held the statute did not apply retroactively to a contract that was incorporated, but not merged, into the final decree. The holding specifically deferred ruling on the effect merger may have had; "no merger occurred, and we do not address what effect, if any, merger would have imposed upon Mr. Rubio's support obligation." Id. at 255, 549 S.E.2d at 613.

To determine whether merger extinguished the agreement's limitation on judicial modification of the contracted support, we review the development of the trial court's authority to establish and modify spousal support. Initially, support arising from contract and that arising from court decree were distinct and mutually exclusive entitlements arising from unrelated legal remedies.

Section 5111 of the Code of 1919 was the predecessor of Code § 20-109. It was the source of the trial court's authority to decree alimony.[3] Alimony, decreed by court, was distinct

---

[2] The parties amended their initial 1989 agreement in 1994. The trial court affirmed, ratified, and incorporated the amended contract in a decree entered June 2, 1994 that in turn amended the 1990 final decree of divorce.

[3] Eaton v. Davis, 176 Va. 330, 337-38, 10 S.E.2d 893, 896-97 (1940), explained:

Alimony had its origin in the ecclesiastical courts of England. These courts had the power of awarding *a mensa* decrees, but absolute divorce was unknown to them, the

- 2 -

from support and maintenance, created by contract. Alimony stemmed from the common-law right of the wife to support by her husband. It was not a property settlement upon dissolution of the marriage and was "'not a judgment for the enforcement of any contract, express or implied, existing between the parties thereto, but for the enforcement of a duty . . . .'" Eaton v. Davis, 176 Va. 330, 338, 10 S.E.2d 893, 897 (1940) (citation omitted). Support was in lieu of alimony and arose as a contracted remedy negotiated by the husband and wife. It was enforced by an action of assumpsit like any other contract. Newman v. McComb, 112 Va. 408, 409-10, 71 S.E. 624, 625 (1911). A court had no authority to modify the contract or to enforce it by its contempt power.

Until 1934, trial courts had no authority to modify alimony decreed in *a vinculo* divorces unless the power was specifically reserved in the final decree. The General Assembly amended Code § 5111 to give the trial court authority to modify any existing decree of alimony upon proof a change was reasonable and fair. 1934 Va. Acts ch. 329. Eaton ruled the authority to modify alimony applied retroactively because alimony was not a property right. 176 Va. at 340, 10 S.E.2d at 898. The decision emphasized the distinctive features of court ordered alimony and contractual support that made them mutually exclusive remedies.

---

jurisdiction to grant an absolute divorce resting solely in Parliament.

The ecclesiastical law of England became part of the common law of Virginia, which therefore embraced *a mensa* divorces and the power in the courts to grant alimony in conjunction with such divorces. The statutes authorizing the Virginia courts to grant *a mensa* divorces are thus declaratory of the common law. Divorces *a vinculo*, on the other hand, came much later in Virginia, and are wholly creatures of statute law.

- 3 -

In 1944, the General Assembly amended Code § 5111 and restricted a trial court's authority to decree alimony when the parties had entered a contract for support.[4]  The effect of this amendment was later summarized in Harris v. Harris, 217 Va. 680, 681, 232 S.E.2d 739, 740-41 (1977):

> Under the proviso contained in Code § 20-109, if a stipulation or contract between spouses is filed with the pleadings or depositions in a divorce case, then no decree or order directing the payment of alimony (now support and maintenance) for a spouse, suit money, or counsel fees shall be entered except in accordance with that stipulation or contract unless a party raise objection thereto prior to entry of the decree.  As we pointed out in McLoughlin v. McLoughlin, 211 Va. 365, 368, 177 S.E.2d 781, 783 (1970), this restricts the court's jurisdiction over awarding "alimony [now support and maintenance], suit money, or counsel fee" to the terms of the contract.

The trial court's authority to award and modify alimony was now constrained by any contract for support.  The distinctive qualities of alimony and support, which had been mutually exclusive, were beginning to intertwine.

Alimony and support began as exclusive remedies offering unique advantages and disadvantages.  Alimony offered the great advantage of enforcement by the contempt power of the courts.  However, it was not a property right, it terminated at death, and it could be modified or eliminated upon changed circumstances.  Foster v. Foster, 195 Va. 102, 108, 77 S.E.2d 471, 474-75 (1953).  Support was not enforceable by contempt.  Moore v. Crutchfield, 136 Va. 20, 28, 116 S.E. 482, 484 (1923).  It only offered contract remedies.  Martin v. Martin, 205 Va. 181,

---

[4] 1944 Va. Acts ch. 277 provided, in part:

> if a stipulation or contract signed by the party to whom such relief might otherwise be awarded is filed with the pleadings or depositions, then no decree or order directing the payment of alimony, suit money, or counsel fee shall be entered except in accordance with that stipulation or contract unless such party raise objection thereto prior to entry of the decree.

185, 135 S.E.2d 815, 818 (1964). However support was a property right, it could extend beyond death, and it was not subject to judicial modification or elimination. Higgins v. McFarland, 196 Va. 889, 895-97, 86 S.E.2d 168, 172-73 (1955). Contractual support offered the great advantage of the stability and the protection against modification or elimination, absent agreement of the parties, afforded to property rights.

The distinctive features of alimony and support presented difficult choices. Durrett v. Durrett, 204 Va. 59, 129 S.E.2d 50 (1963), illustrated the dilemma.

> Mary L. Durrett was afforded two distinct methods of compelling her husband to make provision for her support and maintenance. With the choice of remedies before her, she elected to pursue a remedy by way of alimony, rather than relying on the contract of August 1, 1947. She may have been prompted to seek the alimony allowance during her life, because of the attributes and legal effect of alimony hereinbefore mentioned. She was suffering from what she thought was an incurable disease; and, perhaps, did not expect to survive her husband. She got what she asked for, and ought not now be allowed to deny the meaning and effect of the decree in accordance therewith.

Id. at 64, 129 S.E.2d at 54. A spouse had a choice of remedies: by decree of alimony, or by contract in lieu of alimony. Martin, 205 Va. at 185, 135 S.E.2d at 818. Alimony offered the formidable compulsion of a citation for contempt, but lacked protection against modification or elimination. Contracted support offered stability and predictability but lacked the threat of incarceration to enforce compliance.

The enactment of Code § 20-109.1 in 1970 authorized courts to enforce support contracts by contempt. 1970 Va. Acts ch. 501. The great advantage of alimony became available to contractual support and eliminated its great disadvantage.[5] The practical distinctions between

---

[5] Code § 20-109.1 as first enacted provided:

> Any court may affirm, ratify and incorporate in its decree dissolving a marriage or decree of divorce whether from the bond of matrimony or from bed and board, any valid agreement between

- 5 -

the forms of remedy blurred, and the choice between the two became less perilous.  Indeed, the

term "alimony" discontinued, and "spousal support" became the collective term to describe both

forms of support.

Prior to the enactment of Code § 20-109.1, support arising from contract could only be

enforced by contempt power if it was converted from support in lieu of alimony into alimony.

Once both types of support were enforceable by contempt power, the nature of the support was

no longer the determinative factor when addressing enforcement issues.  However, the nature of

the support remained determinative when analyzing whether a support award was subject to

judicial or legislative modification.  Contractual rights were property rights that subsequent court

decree or legislative enactment could not modify.

In Shoosmith v. Scott, 217 Va. 290, 227 S.E.2d 729 (1976), the husband defended an

action for accrued support payments claiming amendments to Code §§ 20-109 and 20-109.1

terminated his obligation.  The amendments mandated that contractual support cease on

remarriage unless specifically permitted in the contract.[6]  The Court held the wife's right to

---

the parties, or provisions thereof, concerning the conditions of the
maintenance of the parties, or either of them and the care, custody
and maintenance of their minor children.  Where the court affirms,
ratifies and incorporates in its decree such agreement or provision
thereof, it shall be deemed for all purposes to be a term of the
decree, and enforceable in the same manner as any provision of
such decree.  The provisions of this section shall apply to any
decree hereinbefore or hereinafter entered affirming, ratifying and
incorporating an agreement as provided herein.

1970 Va. Acts ch. 501.

[6] Those amendments, effective July 1, 1972, stated:

provided that if any former spouse, for whom provisions for
alimony or support or maintenance have been made in such
stipulation or contract whether entered into heretofore or hereafter,
shall thereafter remarry, the court shall, upon such remarriage,
order that such alimony or support or maintenance for such former

support did not depend alone upon the final decree, but it arose from her property settlement agreement. The decree was a final adjudication of her property right and could not be abrogated by subsequent legislative action. Id. at 292, 227 S.E.2d at 731. Upon rehearing, the Court distinguished the Shoosmith decree from that in Durrett. Shoosmith v. Scott, 217 Va. 789, 232 S.E.2d 787 (1977). It held the payments decreed in Durrett were alimony while those in Shoosmith were contract based payments in lieu of alimony. Id. at 793, 232 S.E.2d at 789. The Shoosmith contract, like all private contracts, could not be impaired by legislative action. Id.

In Doherty v. Doherty, 9 Va. App. 97, 383 S.E.2d 759 (1989), the husband asserted the contract defenses of laches, estoppel, and the statute of limitations as a bar to a claim for support arrearages that accrued prior to the final decree. The final decree had incorporated a contract, which characterized the payments as "monthly alimony payments," and ordered compliance with the decree. Id. at 99, 383 S.E.2d at 760. The decision relied on Durrett, 204 Va. at 62, 129 S.E.2d at 52, to distinguish decrees for alimony from those based on contract. Doherty held the payments were alimony and enforcement of the arrearages was not subject to the husband's contract defenses. "We do not determine here whether husband's pleas in bar would be available in an action brought solely to enforce the contract. In the case before us the contract was merged into the final decree. It is not the contract but rather the decree that is being enforced." 9 Va. App. at 99, 383 S.E.2d at 760. In explaining its characterization that the contract merged into the decree, the opinion quoted from 24 Am. Jur. 2d Divorce and Separation § 841 (1983):

spouse shall cease as of the date of such marriage, and upon the death of any such former spouse, the court shall order that no payment shall be made to the estate of such decedent on account of such provisions, unless such stipulation or contract otherwise specifically provides in the event of remarriage or death.

1972 Va. Acts ch. 482.

"The prevailing view is that where the underlying obligation created by the marital agreement is a promise to pay money, the obligation is merged into the decree."

Doherty used the word "merge" to describe the process by which a contract for "alimony payments" became a decree of alimony not subject to contract defenses. The excerpt from American Jurisprudence Second indicated that a majority of states held the contract ceased to exist when it "merged." Doherty gave no suggestion it adopted such a view, or that it reflected Virginia law. The residual legal effect of the contract was not an issue in the case. Doherty dealt with enforcement, and in that context, it distinguished for the first time between contracts affirmed, ratified, and incorporated, but not merged, from those affirmed, ratified, and incorporated and also merged.

Hering v. Hering, 33 Va. App. 368, 373, 533 S.E.2d 631, 633 (2000), noted this distinction: "Our previous decisions and those of the Supreme Court of Virginia draw a distinction among situations where an agreement is affirmed, where it is incorporated into a decree, or where, as here, the agreement is 'affirmed, ratified, incorporated, but not merged' into the final decree." Relying on Doherty, this Court held: "Where, as here, the agreement was 'incorporated but not merged' into the final decree, the agreement remained enforceable under either contract law or through the court's contempt power." Id. at 373-74, 533 S.E.2d at 634. If a contract was not merged, either the contract or the decree could be enforced. The Hering contract was still enforceable as a contract because it did not merge into the decree. Subsequent amendments to Code § 20-109(A) could not apply retroactively because they would be unconstitutional impairments of contract. Id. at 375, 533 S.E.2d at 634-35.

Rubio, 36 Va. App. at 254, 549 S.E.2d at 613, repeated the discussion in Hering about incorporating and merging contracts into decrees. It concluded Rubios' agreement excluded merger, even though no provision addressed the topic. Because the contract did not merge,

Hering controlled: the contract rights remained enforceable and subsequent statutory changes could not impair them. Id. at 255, 549 S.E.2d at 613.

The cases that employ the term "merge" addressed issues of enforceability. For example, Rubio concluded: "That obligation remains an enforceable contract, excluded from the operation of Code § 20-109(A) and insulated by Code § 20-190(C) from judicial alteration." Id. Those cases did not suggest that "merger" vaporized all rights arising from the contract. They did not address whether the advantages of stability and protection from outside modification vanished, supplanted by a decree subject to the modification the parties contracted to avoid. Merger only addressed enforcement not modification.

Code § 20-109 limits the authority of a trial court to make or modify spousal support awards when an agreement exists. "In such cases, the intent of the parties as expressed in the agreement controls, and the agreement is treated as a contract and construed in the same manner as all contracts." White v. White, 257 Va. 139, 144, 509 S.E.2d 323, 325 (1999). The statute was enacted to require that decrees for support honor agreements made by the parties; it prevents a court from rewriting the parties' contract. It stands as a clarion pronouncement of the policy encouraging settlement by agreement. The statute does not employ the word "merge." It applies to "any valid agreement" once the court affirms the agreement. See id.; Rubio, 36 Va. App. at 253, 549 S.E.2d at 612-13; Hering, 33 Va. App. at 373, 533 S.E.2d at 634.

In this case, the parties agreed spousal support only terminated on death or remarriage. Nothing suggested an intention to terminate support upon cohabitation. We do not infer anything from the agreement's failure to address cohabitation. When the parties made their contract, Code § 20-109 did not terminate support upon cohabitation.

> One of the basic rules of construction of contracts is that the law in force at the date of making a contract determines the rights of the

> parties under the contract. The law effective when the contract is made is as much a part of the contract as if incorporated therein.

Paul v. Paul, 214 Va. 651, 653, 203 S.E.2d 123, 125 (1974) (citation omitted).

The parties' contract was merged into the final decree, but we discern no reason for applying a different result from that reached in Rubio and Hering where the contracts did not merge. Merger prescribes the methods of enforcing entitlements created by contract, and the distinction between merged and non-merged agreements is important in the context of enforcement. The situation is different when addressing the authority of a court to modify the contract under Code § 20-109. The development of the remedies available to a spouse seeking support eliminated the dilemma of choosing between mutually exclusive forms of relief. Basic property rights that limit judicial modification arise when the parties form an agreement. Those essential benefits and detriments now need not expire if the contract merges into the decree for enforcement purposes. Indeed, a party would receive no benefit if merger obliterates negotiated rights that afford stability and predictability to the parties after divorce. Accordingly, the judgment modifying the contract is reversed, and the case remanded for reinstatement of the support obligation.

Reversed and remanded.