COURT OF APPEALS OF VIRGINIA


Present:   Chief Judge Fitzpatrick, Judges Benton, Elder, Annunziata, Bumgardner, Frank,
          Humphreys, Clements, Felton, Kelsey and McClanahan
Argued at Richmond, Virginia


PAUL DAVID NEWMAN
                                                            OPINION BY
v.        Record No. 2728-02-2                     JUDGE D. ARTHUR KELSEY
                                                            MARCH 2, 2004
ELLEN RENEE NEWMAN


UPON REHEARING EN BANC[*]

FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
Timothy J. Hauler, Judge

           Brian H. Jones (Harris W. Leiner; Barnes & Batzli, P.C., on brief),
           for appellant.

           No brief or argument for appellee Ellen Renee Newman.


      On two grounds, Paul David Newman appeals the trial court's denial of his "Motion to

Eliminate and/or Reduce" his contractual obligation to pay his former wife spousal support

pursuant to an agreed support award.  First, he contends we should draw a distinction between

consent decrees signed by counsel and those signed by their clients.  Only the latter type, he

argues, should be immune from judicial modification and termination under Code § 20-109(C).

Second, he asserts that, whether properly signed or not, the consent decree in this case included

language authorizing modification or termination by the courts.  Disagreeing with both

propositions, we affirm.


_____
      [*] This matter comes before the Court pursuant to Code § 17.1-402(D) ("The Court may
sit en banc upon its own motion at any time, in any case in which a majority of the court
determines it is appropriate to do so.").

I.

This proceeding began when Paul David Newman filed a bill of complaint seeking to divorce his wife, Ellen Renee Newman. The bill of complaint also requested rulings regarding child support, custody and visitation of their children, and distribution of marital property. Wife filed a cross-bill seeking spousal support and other relief. While the suit was pending, the parties entered into a written agreement settling all equitable distribution issues and requested that the trial court incorporate that settlement into its final order.

The trial court took evidence on the remaining issues in the case and entered a final decree *nunc pro tunc* on May 25, 2001. The decree awarded custody of the children to wife and granted her child support. The court also awarded $1,200 per month in "Permanent Spousal Support" to wife. Husband's counsel objected to the final decree, contesting the "amount of spousal support and the determination of the [husband's] gross income." Neither party appealed the final decree.

In July 2001, husband filed a "Motion to Amend Spousal Support and Child Support." He argued that a "material change in financial circumstances" made a "decrease in spousal support appropriate." Child support, he further contended, "should be recalculated after an award of spousal support is established." The wife contested the putative change in circumstances and asked that the support remain at the amount previously ordered by the court.

On August 31, 2001, husband and wife advised the trial court that they had settled their spousal support dispute. The parties presented to the trial judge an agreed order stating, in its first sentence, that they appeared "by counsel" and that "all matters in dispute are settled and agreed." The consent decree reduced the permanent spousal support award to $1,000 per month and likewise adjusted the child support obligation. Both obligations, they agreed, would be "continuing as provided in Virginia Code §§ 16.1-278.15 and 20-109." The decree also provided

- 2 -

for a lump sum payment, on February 15 of each year, in additional spousal and child support in the event husband's gross yearly earnings exceeded $65,000. Husband's counsel signed the order under the legend "I ask for this." The signature of wife's counsel appeared below the notation "Seen and Agreed." Counsel for both parties signed the agreed award on behalf of their respective clients. The trial court entered the consent order on September 12, 2001.

Less than five months later, on February 5, 2002, husband filed a "Motion to Eliminate and/or Reduce Spousal Support." He conceded that the earlier consent decree represented a negotiated settlement of the dispute over permanent spousal support. Even so, he argued, the agreement could be judicially terminated or modified because (i) it was signed by counsel on behalf of their clients, rather than by the clients themselves, and (ii) it included an express provision contractually authorizing judicial termination or modification. Wife disputed both claims, contending the consent decree was an "agreement" in the nature of a "stipulation signed by counsel" in compliance with Code § 20-109(C) and "clearly not modifiable under the terms contained therein."

The trial judge rejected husband's motion, finding that the consent decree was "a stipulation that was entered into and reduced to the form of an order by the parties." The attorneys signed the decree on their clients' behalf. "This is not the court's order," the judge explained, "this is the parties' order." And because it was an "agreement between the parties," the judge held, it could not be terminated or modified except pursuant to its contractual terms. Nothing in the consent decree provided either party with such a right. For these reasons, the trial court denied husband's "Motion to Eliminate and/or Reduce Spousal Support."

II.

The underlying principle at issue in this appeal can be simply stated: "Code § 20-109(A) empowers trial courts to modify a spousal support award, but Code § 20-109(C) expressly limits

the court's authority to modify an agreed upon spousal support award according to the terms of a stipulation or contract signed by the parties." Blackburn v. Michael, 30 Va. App. 95, 100, 515 S.E.2d 780, 783 (1999). This case requires us to decide whether an agreement setting the amount of spousal support — embodied in a consent decree signed by counsel on behalf of their respective clients — qualifies as a stipulation or contract under Code § 20-109(C) for purposes of giving it the one critical quality that most legally binding agreements ordinarily have: They cannot be rewritten by the courts. For the following reasons, we hold that it does.

A. *The Consent Decree Was A "Stipulation or Contract."*

The trial judge held that the consent decree was not only an "agreement between the parties," but one that rose to the level of a "*stipulation* that was entered into and reduced to the form of an order by the parties." (Emphasis added). The trial judge's characterization of the consent decree rests on the widely accepted proposition that a stipulation is "an agreement between counsel respecting business before a court." Burke v. Gale, 193 Va. 130, 137, 67 S.E.2d 917, 920 (1951) (quoting Black's Law Dictionary 1660 (3d ed. 1933) ("Stipulation")); see also Lane v. Lane, 32 Va. App. 125, 129, 526 S.E.2d 773, 775 (2000); Orlandi v. Orlandi, 23 Va. App. 21, 26, 473 S.E.2d 716, 719 (1996) (recognizing that a "consent decree is a contract or agreement between the parties to the suit, entered of record in the cause with the consent of the court, and is binding"); Durrett v. Durrett, 204 Va. 59, 63, 129 S.E.2d 50, 53 (1963) (same); Barnes v. Am. Fertilizer Co., 144 Va. 692, 720, 130 S.E. 902, 911 (1925) (same); see generally Restatement (Second) of Contracts: Stipulations § 94 (1981).

It was exactly this understanding of "stipulation" that we adopted in Lane for purposes of interpreting Code § 20-109(C). Lane, 32 Va. App. at 129, 526 S.E.2d at 775. It stems from the observation that, with consent decrees, the parties obviously reach their "agreement before the decree" and thus "the decree merely formalize[s] the obligations already assumed." Schmidt v.

- 4 -

Schmidt, 6 Va. App. 501, 505, 370 S.E.2d 311, 313 (1988). Under Code § 20-109.1, a trial court may "incorporate" by reference contractual provisions into any decree either before or after the entry of a final order. All the more, a trial court may incorporate verbatim the terms of an agreement into the very text of a consent decree. The trial court, therefore, did not err in holding that the consent decree constitutes a "stipulation or contract" under Code § 20-109(C).

B. *The "Stipulation or Contract" Was Signed By The Parties Through Their Attorneys Acting With Actual Authority.*

Code § 20-109(C) requires that the "party to whom such relief might otherwise be awarded" sign the stipulation or contract. In this case, husband concedes that both attorneys, acting with actual authority, signed the consent decree on their respective clients' behalf. During oral argument before us, husband's counsel made plain that he has "never contested" either attorney's authority to sign the consent decree in that representative capacity. There can be no question, therefore, that counsel signed the decree as authorized agents acting on behalf of their principals.

Husband nevertheless claims that we should make a distinction between consent decrees signed by attorneys on their clients' behalf and those signed by the clients personally. Relying on Lane, husband asserts that Code § 20-109(C) codified this distinction. See Lane, 32 Va. App. at 129, 526 S.E.2d at 775 (stating that a consent decree signed by both counsel on behalf of their clients was a decree "signed by neither party"). We disagree for two reasons. First, we view Lane's endorsement of that distinction as *dicta* having no *stare decisis* weight. Second, the Lane distinction requires an interpretation of the signature requirement in conflict with settled principles of statutory construction.

(i). *Stare Decisis Does Not Apply To The Lane Dicta.*

A closer look at the actual holding in Lane demonstrates that its language about who has to sign the decree is *dicta*. In Lane, the parties entered into a spousal support agreement

- 5 -

memorialized in a final divorce decree entered in 1988. Counsel for the parties signed the agreed decree, but their clients did not. In 1989, the parties entered into a "subsequent agreement" and submitted a new consent order memorializing it. Lane, 32 Va. App. at 128, 526 S.E.2d at 775. This time, however, the wife personally endorsed the order. After the trial court entered the consent order, it became the "governing agreement between the parties." Id. at 130, 526 S.E.2d at 776.

Eight years later, in 1997, the husband in Lane filed a petition under Code § 20-109 to modify or terminate his support obligation due to changed circumstances. The trial court stated that it had the authority to modify or terminate support, but declined to exercise that authority because the evidence did not prove that circumstances had changed enough to support the petition. Both the wife and husband appealed: the wife complained about the trial court's reasoning, the husband about the court's result.

Lane held that the trial court reached the right result, but for the wrong reason. The right reason, Lane explained, was that with or without changed circumstances, Code § 20-109(C) forbids modification or termination of support unless consistent with the parties' agreement. The "governing agreement" was the 1989 consent order signed personally by the wife as the payee party. Id. at 130, 526 S.E.2d at 776. And it did not authorize modification or termination under the circumstances alleged.

In the course of the opinion, however, Lane also addressed whether the original divorce decree entered in 1988 satisfied Code § 20-109(C). Id. at 129, 526 S.E.2d at 775 (referencing former § 20-109(B), which contained the requirements now found in § 20-109(C)). Lane opined that the original 1988 decree violated Code § 20-109(C) because the parties' counsel, not the parties themselves, signed it. Neither the holding nor the *ratio decidendi* of Lane required any examination of whether the earlier agreement memorialized in the 1988 decree — the

- 6 -

non-governing agreement superceded by the 1989 consent order — complied with the signature requirement of Code § 20-109(C). It made no difference whether it did or not. Whether the wife's lawyer could sign the 1988 decree as an agent on her behalf was irrelevant because the wife personally signed the 1989 consent order.

*Stare decisis* cannot be properly applied without "the need to distinguish an opinion's holding from its *dicta*." United States Nat'l Bank of Ore. v. Indep. Ins. Agents of Am., Inc., 508 U.S. 439, 463 n.11 (1993). *Dicta* in a prior decision generally refers to that portion of an opinion "not essential" to the disposition in the case. Cent. Green Co. v. United States, 531 U.S. 425, 431 (2001) (characterizing a portion of a prior opinion as "unquestionably dictum because it was not essential to our disposition").[1] As the Virginia Supreme Court has explained:

> It is a maxim not to be disregarded, that general expressions, in every opinion, are to be taken in connection with the case in which these expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in the subsequent suit when the very point is [involved] for decision.

Va. Ry. & Power Co. v. Dressler, 132 Va. 342, 350-51, 111 S.E. 243, 245-46 (1922) (Burks, J.) (quoting Cohens v. Virginia, 19 U.S. (6 Wheat.) 264, 399 (1821) (Marshall, C.J.)). *Dicta* cannot "serve as a source of binding authority in American jurisprudence." United States v. Pasquantino, 336 F.3d 321, 329 (4th Cir. 2003) (*en banc*).[2]

---

[1] *Stare decisis* "applies not merely to the literal holding of the case, but also to its *ratio decidendi* — the essential rationale in the case that determines the judgment." Clinchfield Coal Co. v. Reed, 40 Va. App. 69, 73-74, 577 S.E.2d 538, 540 (2003). In other words, "it is not only the result but also those portions of the opinion necessary to that result by which we are bound." Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 67 (1996).

[2] See also Alexander v. Sandoval, 532 U.S. 275, 282 (2001) (recognizing that under *stare decisis*, courts are "bound by holdings, not language"); Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 379 (1994) (noting that "[i]t is to the holdings of our cases, rather than their dicta, that we must attend"); United States v. Dixon, 509 U.S. 688, 706 (1993).

(ii). *The Signature Requirement*

Code § 1-10 preserves the common law as the "rule of decision" except when "altered by the General Assembly." Absent a clearly expressed legislative intent otherwise, statutes should not be construed to displace long-established common law principles. Herndon v. St. Mary's Hosp., Inc., 266 Va. 472, 476, 587 S.E.2d 567, 569 (2003); Patten v. Commonwealth, 262 Va. 654, 658, 553 S.E.2d 517, 519 (2001); Melanson v. Commonwealth, 261 Va. 178, 181, 539 S.E.2d 433, 434 (2001). "Abrogation of the common law requires that the General Assembly plainly manifest an intent to do so." Linhart v. Lawson, 261 Va. 30, 35, 540 S.E.2d 875, 877 (2001).

Under the common law of agency, the signature of a disclosed, authorized agent has the same legal force as the signature of his principal. Unless the facts show otherwise, a contractual instrument should be "interpreted as the instrument of the principal and not of the agent if, in the signature or description of the parties, the name of the principal and agent both appear, the agent indicating his agency." Restatement (Second) of Agency § 156 (1958). Consequently, "[a]ny signature or description from which it appears that the parties intend that the principal and not the agent shall be a party is efficacious in creating an inference that the principal is a party." Id. § 156 cmt. a; see also E. Allan Farnsworth, 2 Farnsworth on Contracts § 6.8 (2d ed. 2001) (recognizing that a "party's signature may be made by an agent").

Common law agency principles apply to the attorney-client relationship. See, e.g., Va. Elec. & Power Co. v. Bowers, 181 Va. 542, 547, 25 S.E.2d 361, 363 (1943) (noting that "an attorney is the agent of his client"); cf. Walson v. Walson, 37 Va. App. 208, 214-16, 556 S.E.2d 53, 56-57 (2001) (discussing common law agency principles, specifically those distinguishing actual from apparent authority, in the context of an attorney-client relationship). To be sure, in various contexts (Rule 5A:18 waivers, open-court stipulations, proffers from counsel, to name a

few), we often treat an attorney as legally synonymous with his or her client. Any other view would be "wholly inconsistent with our system of representative litigation," Link v. Wabash R.R. Co., 370 U.S. 626, 634 (1962), in which an attorney serves as an "agent when acting, or failing to act, in furtherance of the litigation," Coleman v. Thompson, 501 U.S. 722, 753 (1991) (citation omitted).

Nothing in Code § 20-109(C) displaces these common law principles. The statutory requirement that the parties sign the agreement does not, either linguistically or legally, exclude them from doing so through their attorneys. The very use of the term "stipulation" implies that counsel may sign on their clients' behalf. While it could involve an agreement between *pro se* parties, more often than not a "stipulation contemplates 'an *agreement between counsel* respecting business before a court.'" Burke, 193 Va. at 137, 67 S.E.2d at 920 (citation omitted and emphasis added); see also Lane, 32 Va. App. at 129, 526 S.E.2d at 775.

Moreover, subsections A and B of § 20-109 authorize either "party" to file modification petitions in court. Under husband's interpretation, this would exclude the party's counsel from performing this task on behalf of the client — a near universal practice in our courts. Such an interpretation would hardly be in keeping with the longstanding principle that "when the same word is used in different parts of the same statute, the presumption is that it was used in the same sense throughout the statute, unless a contrary intention clearly appears." Bridgewater Mfg. Co. v. Funkhouser, 115 Va. 476, 480, 79 S.E. 1074, 1076 (1913); see also Bd. of Supervisors of Albemarle County v. Marshall, 215 Va. 756, 761-62, 214 S.E.2d 146, 150 (1975); Weaver v. Commonwealth, 25 Va. App. 95, 101, 486 S.E.2d 558, 561 (1997).

For these reasons, we hold that an attorney acting with actual authority may sign a consent decree on his client's behalf and thereby satisfy the signature requirement of Code § 20-109(C).

### C. *The "Stipulation or Contract" Does Not Expressly Authorize Judicial Modification Or Termination.*

We apply ordinary principles of contract law when construing a "stipulation or contract" under Code § 20-109(C). "While a consent decree is a court order, it is 'contractual in its nature and should be construed as though it were a contract.'" Gazale v. Gazale, 219 Va. 775, 779, 250 S.E.2d 365, 367 (1979) (quoting Culpeper Nat'l Bank v. Morris, 168 Va. 379, 385, 191 S.E. 764, 767 (1937)).[3] Absent equitable grounds warranting rescission, a contract cannot be judicially modified or terminated at the unilateral request of a contract party unless the agreement expressly authorizes such relief. The same is true for a consent decree. See 11A Michie's Jurisprudence of Virginia & West Virginia, Judgments & Decrees § 174, at 268 (1997) ("From the very nature of the consent judgment or decree it cannot be altered or modified except by consent, unless there has been a clerical mistake.").

The "except in accordance with that stipulation or contract" proviso in Code § 20-109(C) applies this general maxim of contract law to consensual spousal support awards. In doing so, the statute requires the proponent of the requested modification or termination to show that the "stipulation or contract" authorizes such relief. Code § 20-109(C). "This provision of Code § 20-109," the Virginia Supreme Court has often explained, "inhibits the power of the court to award or consider modification of the decree to the extent that spousal support and maintenance are provided for in the incorporated agreement of the parties." White v. White, 257 Va. 139, 144, 509 S.E.2d 323, 325 (1999).[4] In this way, Code § 20-109 offers to contractual spousal

---

[3] See also United States v. ITT Cont'l Baking Co., 420 U.S. 223, 236 (1975) (observing that "since consent decrees and orders have many of the attributes of ordinary contracts, they should be construed basically as contracts"); Anita's New Mexico Style Mexican Food v. Anita's Mexican Foods Corp., 201 F.3d 314, 319 (4th Cir. 2000) (recognizing that "rules of contract construction" should be used "when determining the scope of a consent decree").

[4] See also Lindsay v. Lindsay, 218 Va. 599, 604, 238 S.E.2d 817, 820 (1977) (recognizing the power to modify where the trial court had "been authorized by the consent order

support "the great advantage of the stability and the protection against modification or elimination" by the courts. Smith v. Smith, 41 Va. App. 742, 747, 589 S.E.2d 439, 441 (2003).

Subsections A and D of § 20-109 reverse that sequence in cases involving cohabitation, remarriage, or death. See Smith, 41 Va. App. at 743-44, 589 S.E.2d at 439-40. In such cases, the stipulation or contract must expressly *preclude* termination of the contractual duty of spousal support on these grounds. If it fails to do so, the contractual obligation may be terminated. See Hardesty v. Hardesty, 40 Va. App. 663, 581 S.E.2d 213 (2003) (*en banc*). For all other possible grounds, however, the burden remains on the party seeking to back out of the contractual duty of spousal support.

In this case, husband seeks to "Eliminate and/or Reduce" his contractual duty of spousal support on grounds other than cohabitation, remarriage, or death. As a result, he correctly acknowledges, if his agreement does not "retain modifiability" then "by default" it remains non-modifiable. Though conceding this principle, however, husband finds fault with the trial court's application of it to the consent decree. Under husband's interpretation, the consent decree expressly authorizes judicial modification and termination of the duty to pay spousal support by stating that it would be "continuing as provided in Virginia Code §§ 16.1-278.15 and 20-109."

---

to make changes in the provisions for support"); Harris v. Harris, 217 Va. 680, 681, 232 S.E.2d 739, 741 (1977) (holding trial court erred by "eliminating" spousal support payments required by an agreement incorporated into a consent decree); Thomas v. Thomas, 216 Va. 741, 743, 222 S.E.2d 557, 558-59 (1976) (noting that, under the "proviso" in Code § 20-109, the trial court's authority is "expressly limited" by statute from any judicial modification "except in accordance with that stipulation or contract" between the parties); Dienhart v. Dienhart, 210 Va. 101, 102, 168 S.E.2d 279, 281 (1969) (noting that Code § 20-109 "inhibits the usual power of the court to modify" court ordered spousal support payments); Fleming v. Fleming, 32 Va. App. 822, 826, 531 S.E.2d 38, 40 (2000) ("Furthermore, under Code § 20-109, when a contract between the parties is filed before entry of the final decree, the trial judge may not enter an order or decree for spousal support except in accordance with that contract." (citing White v. White, 257 Va. 139, 144, 509 S.E.2d 323, 325 (1999))).

The trial court correctly held this clause did no such thing. The reference to Code § 16.1-278.15 deals with child support. The oblique reference to Code § 20-109 deals with spousal support, but tells us nothing other than the statute applies to the consent decree — an axiomatic proposition that, in any event, begs the question. Of course the statute applies. The question is whether the contracting parties intended this phrase to strip the consent decree of its contractual character, giving it the status of a mere contested decree subject to being judicially changed or vacated over the objection of one of the parties. The answer to that question must be no. A cryptic reference to Code § 20-109 does not tell us whether the consent decree was to remain a contract immune from modification under subsection C or to become a mere order subject to modification under subsection A.

The Virginia Supreme Court dealt with an analogous situation in McLoughlin v. McLoughlin, 211 Va. 365, 367, 177 S.E.2d 781, 782 (1970). There, the parties entered into a settlement agreement expressly "in accordance with Title 20, paragraph 109, of the Code of Virginia of 1950, as amended." The trial court merged this agreement into a consent decree and made "every part thereof incorporated and made a part of this decree by this reference." Id. at 366, 177 S.E.2d at 782. Refusing the husband's later request that the support be terminated, the Supreme Court held that the reference to Code § 20-109 did not authorize judicial interference with the contractual duty of support because the very statute cited included a "proviso" forbidding such relief "except in accordance with" the stipulation or contract. McLoughlin, 211 Va. at 367, 177 S.E.2d at 782.[5]

In this case, as in McLoughlin, the mere mention of Code § 20-109 falls far short of demonstrating that the contracting parties intended to authorize future judicial modifications to,

---

[5] Code § 20-109, since McLoughlin, has been amended and subdivided in ways unrelated to our application of it here.

- 12 -

or outright terminations of, the contractual duty to pay spousal support. To be sure, if a simple reference to the statute were to connote anything, it would be the opposite. "The statute was enacted to require that decrees for support honor agreements made by the parties; it prevents a court from rewriting the parties' contract. It stands as a clarion pronouncement of the policy encouraging settlement by agreement." Smith, 41 Va. App. at 751, 589 S.E.2d at 443.

## III.

The trial court did not err in denying husband's "Motion to Eliminate and/or Reduce" his contractual obligation to pay spousal support. We thus affirm its decision.

Affirmed.

Benton, J., with whom Fitzpatrick, C.J., Elder and Clements, JJ., join, dissenting.

The dispositive issue in this case is not whether the parties reached an agreement or whether the agreement can be reflected in an order. They reached an agreement to avoid the necessity of a hearing. Furthermore, the agreement the parties reached is properly reflected by the judge's September 12, 2001 order. The issue, rather, is whether the agreement (i) was a compromise only of the issues then in dispute by an order of modification pursuant to Code § 20-109(A) and Code § 20-108 or (ii) was a final settlement of spousal support for all times pursuant to Code § 20-109(C) and a settlement of child custody issues by an order of modification pursuant to Code § 20-108. I would hold that the trial judge erred in ruling that the September 12, 2001 order, which modified the child custody and spousal support provisions of the final decree of divorce and was entered upon the request of the attorneys for the parties, renders spousal support non-modifiable.

I.

In a case involving spousal support, the Supreme Court "recognized that divorce and related matters constitute a distinct category, one not always subject to the body of jurisprudence generally applicable to common law suits and actions." Reid v. Reid, 245 Va. 409, 413, 429 S.E.2d 208, 210 (1993). Spousal support falls within this distinct category because the court's jurisdiction to render spousal support decrees in divorce proceedings is statutory and limited. Lapidus v. Lapidus, 226 Va. 575, 578, 311 S.E.2d 786, 788 (1984).

> The many limitations, both in respect to jurisdiction and procedure, placed upon divorce suits by the statute, differentiate the divorce case from ordinary suits in equity and render it a chancery case *sui generis*.

> \* \* \* \* \* \* \*

> "It is an undoubted general principle of the law of divorce in this country that the courts either of law or equity, possess no powers except such as are conferred by statute; and that, to justify

- 14 -

any act or proceeding in a case of divorce, whether it be such as pertains to the ground or cause of action itself, to the process, pleadings or practice in it, or to the mode of enforcing the judgment or decree, authority must be found in the statute, and cannot be looked for elsewhere, or otherwise asserted or exercised."

McCotter v. Carle, 149 Va. 584, 593-94, 140 S.E. 670, 673-74 (1927) (citation omitted).

A judge rendering a divorce decree is authorized by statute to decree spousal support, subject to the provisions of Code § 20-109.  See Code § 20-107.1(A) and (B).  In pertinent part, Code § 20-109 provides as follows:

> A.  Upon petition of either party the court may increase, decrease, or terminate the amount or duration of any spousal support and maintenance that may thereafter accrue, whether previously or hereafter awarded, as the circumstances may make proper. . . .
>
> \*     \*     \*     \*     \*     \*     \*
>
> C.  In suits for divorce, annulment and separate maintenance, . . . if a stipulation or contract signed by the party to whom such relief might otherwise be awarded is filed before entry of a final decree, no decree or order directing the payment of support and maintenance for the spouse, suit money, or counsel fee or establishing or imposing any other condition or consideration, monetary or nonmonetary, shall be entered except in accordance with that stipulation or contract.  If such a stipulation or contract is filed after entry of a final decree and if any party so moves, the court shall modify its decree to conform to such stipulation or contract.

In subsection A of the statute, the legislature authorized courts to modify spousal support orders upon a showing of a proper change in circumstances.  See Dixon v. Pugh, 244 Va. 539, 541, 423 S.E.2d 169, 170 (1992) (noting Virginia's traditional rule "that a court may not modify an award of spousal support in a divorce decree in the absence of a statute or a clear and explicit reservation of jurisdiction to modify the spousal support provision"); Jacobs v. Jacobs, 219 Va. 993, 995, 254 S.E.2d 56, 58 (1979) (holding "that spousal support awards must be determined in light of contemporary circumstances and then, if necessary, redetermined in light of new

- 15 -

circumstances"); Moreno v. Moreno, 24 Va. App. 190, 195, 480 S.E.2d 792, 794-95 (1997) (holding that Code § 20-109(A) requires a "'moving party in a petition for modification of support . . . to prove both a material change in circumstances and that this change warrants a modification of support'"). When the parties have entered into a "stipulation or contract," subsection C of the statute provides a limitation on a judge's statutory authorization to enter a "final decree . . . except in accordance with that stipulation or contract." See Blackburn v. Michael, 30 Va. App. 95, 100, 515 S.E.2d 780, 783 (1999) (holding that Code § 20-109(C) limits a judge's authority "according to the terms of a stipulation or contract signed by the parties").

Although Code § 20-109 permits parties to bind themselves by a contract or stipulation to spousal support provisions and, thereby, to limit a judge's authority to enter decrees "except in accordance with that stipulation or contract," the parties only have the power to limit the judge's authority granted by subsection A when they have conformed to the requirements of subsection C. This limitation is significant because Code § 20-109 also empowers trial judges to modify spousal support pursuant to subsection A when that support was previously fixed by court order and is not the result of a stipulation or contract pursuant to subsection C. In other words, the statute limits the trial judge's authority to decree support only "*if a stipulation or contract signed by the party to whom such relief might otherwise be awarded is filed.*" Code § 20-109(C) (emphasis added). Pertinent to this appeal, the statute further provides that "*[i]f such a stipulation or contract is filed after entry of a final decree and if any party so moves, the court shall modify its decree to conform to such stipulation or contract.*" Code § 20-109(C) (emphasis added).

The Supreme Court long ago recognized the requirement under Code § 20-109 to "file" the contract in the circuit court.

> Under the proviso contained in Code § 20-109, if a stipulation or
> contract between spouses is filed with the pleadings or depositions

in a divorce case, then no decree or order directing the payment of alimony (now support and maintenance) for a spouse, suit money, or counsel fees shall be entered except in accordance with that stipulation or contract unless a party raise objection thereto prior to entry of the decree.

Harris v. Harris, 217 Va. 680, 681, 232 S.E.2d 739, 781 (1977). The Court has also held that "since its enactment, the usual practice [under Code § 20-109 and under its predecessor § 5111] is to recite in the decree that a contract has been executed by the parties and 'filed with the pleadings, depositions.'" Wallihan v. Hughes, 196 Va. 117, 126, 82 S.E.2d 553, 559 (1954). Indeed, the plain language of Code § 20-109(C) makes its provisions operative only when a "stipulation or contract is filed" before entry of a final decree or before the trial judge modifies the final decree. By "using clear, detailed language," Lapidus, 226 Va. at 578, 311 S.E.2d at 788, the General Assembly manifested its purpose and signaled "the process, pleading or practice" to be followed in invoking the statutory proviso. McCotter, 149 Va. at 594, 140 S.E. at 674.

II.

Simply put, the record reflects that prior to the judge's entry of the September 12, 2001 order, the parties filed no stipulation or contract as contemplated by Code § 20-109(C) and no party moved the judge to "modify [the final] decree to conform to such stipulation or contract." Id. Indeed, the attorneys in this case demonstrated their awareness of the mandates of Code § 20-109(C) when, prior to the entry of the final decree, they filed in the trial court a document styled "Agreement between Ellen Newman and Paul Newman." The husband and wife had signed this written agreement while the suit was pending for the purpose of settling all "property issues requiring determination by the Court." When the attorney filed this agreement in the trial court, the attorney also filed a motion requesting "the Court to file the . . . written settlement agreement" and to "affirm, ratify and incorporate the terms of the parties' written settlement

- 17 -

agreement into any order hereafter entered." Thus, by following the mandates of the statute, the parties unmistakenly indicated that no decree was to "be entered except in accordance with that . . . contract." Code § 20-109(C). See also Harris, 217 Va. at 681, 232 S.E.2d at 781 (holding that the limitation on the court's power to enter a decree is triggered only "if a stipulation or contract . . . is filed . . . in a divorce case"). Because the record establishes that the September 12, 2001 order was not entered upon these statutory requirements, it reflects an order of the judge entered under Code § 20-109(A).

The husband presents the question "whether [his] obligation to pay spousal support to [the wife] is modifiable where the parties entered into a prior consent order providing that the spousal and child support obligations are 'continuing as provided in . . . Code §§ 16.1-278.15 and 20-109' and where the parties did not sign the consent order?" In part, he argues that "[t]he spousal support obligation owed . . . to [the wife] is modifiable by a court . . . because they specifically referenced the statute affording the relief of modifiability in their *agreed order*." (Emphasis added). He further argues that the September 12, 2001 order "is not a 'stipulation or contract' as contemplated in [Code] § 20-109(C)," noting neither he nor the wife signed the order.

I believe it is reasonably clear from the argument advanced by the husband, that the use of the word "consent" order in his statement of the issue before us is no more than the loose vernacular of the legal profession to describe an uncontested order. The September 12, 2001 order contains no indication on its face that it was a "consent" order. See Golderos v. Golderos, 169 Va. 496, 504, 194 S.E. 706, 709 (1938) (noting that consent orders must "show affirmatively on the face thereof that they were entered by consent"). It is not styled "consent" order, and it does not contain that word in the body of the order. In Denny v. Searles, 150 Va. 701, 143 S.E. 484 (1928), where the parties had sought an order confirming a settlement, the Supreme Court

- 18 -

held that a decree entered by a judge does not become a "consent" decree merely because "[t]he decree recited that all parties in interest desired the Court to approve the *release and settlement*" and the "decree was asked for by writing on the back thereof signed by counsel for all parties in interest." Id. at 730-31, 143 S.E. at 493. In short, an order does not become a "consent" order merely because the parties by their attorneys have added their agreement to the judge's adjudication. Nothing on the face of the order or in the record of this case imports verity to the notion that the September 12, 2001 order was a "consent" order. Rather, it was merely the parties' agreement to the judge's adjudication of the pending issues in accordance with the submitted order. The husband says as much in his brief when he contends the parties "specifically referenced the statute affording the relief of modifiability in their *agreed order*." (Emphasis added).

The record clearly establishes that the September 12, 2001 order served a limited purpose. It was part of the parties' continuing effort to determine spousal and child support. Earlier in the proceeding and prior to entry of the divorce decree, the trial judge sent to the parties a letter opinion, ruling that the wife was entitled to spousal support and that the wife should have custody of the three children. The husband then filed motions to obtain custody of one child and to amend the provisions for spousal and child support. Before the trial judge acted on these motions, the wife's attorney submitted a draft of a final decree of divorce to the judge with the husband's objections, and the judge entered the "final decree" on July 26, 2001, *nunc pro tunc* May 25, 2001. The final decree awarded monthly spousal support to the wife in the amount of $1,200, granted the wife custody of the parties' three children, and awarded monthly child support in the amount of $1,874. The final decree contained no provisions for visitation by the husband with the children.

After the trial judge signed the final decree, the husband filed another notice of hearing on his motions. In preparation for the hearing, the parties subpoenaed witnesses and filed exhibits with the trial court. The hearing, however, was postponed. As judges frequently urge, the parties and their attorneys reached a compromise concerning the disputed matters without the necessity of a hearing and a ruling by the judge on the evidence. The attorneys drafted an order that addressed in detail the contested issues of child custody, child support, and spousal support. The husband's attorney signed the order under the legend, "I ask for this"; the wife's attorney signed the order under the legend, "Seen and agreed."

The order the trial judge entered on September 12, 2001 modified the provisions of the final decree concerning child custody, child support, and spousal support. The judge's order was merely styled, "ORDER"; it was dated the day of the postponed hearing; it recited that the proceeding was "upon motions filed by the [husband]"; and it contained the parties' representation "that all matters in dispute are settled and agreed." It included provisions that "ORDERED" (i) physical custody of one child to the father, (ii) continuation of the parties' joint legal custody of all three children, (iii) specific visitation schedules for the children, and (iv) monthly child support of $658 and spousal support of $1,000 "continuing as provided in . . . Code §§ 16.1-278.15 and 20-109" and adjusting each year in accordance with a formula contained in the order, with the proviso that any increased support "be designated 1/3 child support and 2/3 spousal support." The order contained a generalized reference to Code § 20-109, without referencing either subsection A or subsection C. Containing a proviso that child and spousal support would be "continuing as provided in . . . Code § 16.1-278.15 and 20-109," the order made no material distinction between its effect on child support, which is always modifiable regardless of the parties' agreement, see Parrillo v. Parrillo, 1 Va. App. 226, 231, 336 S.E.2d 23, 26 (1985), and spousal support, which is modifiable according to Code § 20-109(A).

- 20 -

By presenting the September 12, 2001 order for the trial judge's signature, the attorneys clearly indicated to the judge that the order represented an agreed adjudication of the disputed issues then pending for a hearing and decision. The order, however, does not expressly represent to do more than this. Indeed, the order's provision that spousal support is "continuing as provided in . . . Code § 20-109" is inconsistent with a claim that the order invokes subsection C. Significantly, the record does not indicate either party requested, or the judge found when the order was presented, that the September 12, 2001 order was to be entered "to modify [the final] decree to conform to such stipulation or contract." Code § 20-109(C). The record establishes, however, that neither party filed a document purporting to be a "stipulation or contract" signed by the parties before submitting the endorsed order.[6] Furthermore, the endorsed order does not contain at any place the word "consent." If, as the wife later orally argued to the trial judge, the court order itself is to be considered as the "stipulation or contract" contemplated by subsection C, it could not have served that function in this case because the order, when entered, did not clearly specify that it was to be so and it did not reference the limitations of Code § 20-109(C). To require any less would engender confusion as to whether the court order is entered pursuant to Code § 20-109(A) and (B) or pursuant to Code § 20-109(C).

As the Supreme Court has recognized, public policy encourages settlement of disputes because it enhances judicial efficiency of the adjudicative process, avoids litigation costs, and reduces uncertainty in results. See Morris v. Morris, 216 Va. 457, 459, 219 S.E.2d 864, 867 (1975) (noting that "public policy favors prompt resolution of disputes"). Settlements of disputes concerning spousal support issues that are pending before a judge for decision can take

_____

[6] As the husband argues, the absence of the parties' signatures on a document is significant. The proposed order, which was signed only by the attorneys, reinforces the notion that the order was merely an agreement to the judge's adjudication of the pending issues in accordance with the submitted order.

the form of an "agreed" order requested by the parties pursuant to Code § 20-109(A) or (B) or by stipulation or contract "filed" pursuant to Code § 20-109(C). In a given case, this statutory scheme obviously would accommodate a circumstance in which the parties by their attorneys agreed to the entry of an order that expressly provides that spousal support shall not be modifiable.[7] Nothing in Code § 20-109 would bar the effect of an agreed order providing support shall not be modifiable. That, however, was not what occurred in this case.

## III.

I would hold that the record unambiguously reflects that the parties agreed to settle the disputed issues, which were then in litigation and scheduled for the August hearing, and that their attorneys presented to the judge for entry an "agreed" order endorsed by the attorneys reflecting a compromise to resolve the disputed issues without the necessity of an evidentiary hearing and decision by the judge. Because the order was consistent with Code § 20-109(A), the order does not reference Code § 20-109(C), and the record does not reflect that the parties satisfied the requirement of Code § 20-109(C) to move "the court [to] modify its decree to conform to [a filed] stipulation or contract," I would hold that the trial judge erred in ruling that the spousal support ordered by the September 12, 2001 order was not modifiable.

Accordingly, I would reverse the judgment and remand for rehearing.

---

[7] Unlike the general rule that a trial judge cannot modify a civil judgment order after twenty-one days, see Rule 1:1, support judgments in divorce cases are statutorily distinct because a judge has continuing authority to modify decrees for child support and spousal support upon a showing of a material change in circumstances, notwithstanding Rule 1:1. See Code §§ 20-108 and 20-109(A); Riggins v. O'Brien, 263 Va. 444, 447, 559 S.E.2d 673, 675 (2002); Furr v. Furr, 13 Va. App. 479, 481, 413 S.E.2d 72, 73 (1992).