UPON REHEARING EN BANC.*
KELSEY, Judge.
On two grounds, Paul David Newman appeals the trial court’s denial of his “Motion to Eliminate and/or Reduce” his contractual obligation to pay his former wife spousal support pursuant to an agreed support award. First, he contends we should draw a distinction between consent decrees signed by counsel and those signed by their clients. Only the latter type, he argues, should be immune from judicial modification and termination under Code § 20-109(C). Second, he asserts that, whether properly signed or not, the consent decree in this case included language authorizing modification or termination by the courts. Disagreeing with both propositions, we affirm.
I.
This proceeding began when Paul David Newman filed a bill of complaint seeking to divorce his wife, Ellen Renee Newman. The bill of complaint also requested rulings regarding child support, custody and visitation of their children, and distribution of marital property. Wife filed a cross-bill seeking spousal support and other relief. While the suit was pending, the parties entered into a written agreement settling all equitable distribution issues and requested that the trial court incorporate that settlement into its final order.
The trial court took evidence on the remaining issues in the case and entered a final decree nunc pro tunc on May 25, 2001. The decree awarded custody of the children to wife and *561 granted her child support. The court also awarded $1,200 per month in “Permanent Spousal Support” to wife. Husband’s counsel objected to the final decree, contesting the “amount of spousal support and the determination of the [husband’s] gross income.” Neither party appealed the final decree.
In July 2001, husband filed a “Motion to Amend Spousal Support and Child Support.” He argued that a “material change in financial circumstances” made a “decrease in spousal support appropriate.” Child support, he further contended, “should be recalculated after an award of spousal support is established.” The wife contested the putative change in circumstances and asked that the support remain at the amount previously ordered by the court.
On August 31, 2001, husband and wife advised the trial court that they had settled their spousal support dispute. The parties presented to the trial judge an agreed order stating, in its first sentence, that they appeared “by counsel” and that “all matters in dispute are settled and agreed.” The consent decree reduced the permanent spousal support award to $1,000 per month and likewise adjusted the child support obligation. Both obligations, they agreed, would be “continuing as provided in Virginia Code §§ 16.1-278.15 and 20-109.” The decree also provided for a lump sum payment, on February 15 of each year, in additional spousal and child support in the event husband’s gross yearly earnings exceeded $65,000. Husband’s counsel signed the order under the legend “I ask for this.” The signature of wife’s counsel appeared below the notation “Seen and Agreed.” Counsel for both parties signed the agreed award on behalf of their respective clients. The trial court entered the consent order on September 12, 2001.
Less than five months later, on February 5, 2002, husband filed a “Motion to Eliminate and/or Reduce Spousal Support.” He conceded that the earlier consent decree represented a negotiated settlement of the dispute over permanent spousal support. Even so, he argued, the agreement could be judicially terminated or modified because (i) it was signed by counsel on behalf of their clients, rather than by the clients them *562 selves, and (ii) it included an express provision contractually authorizing judicial termination or modification. Wife disputed both claims, contending the consent decree was an “agreement” in the nature of a “stipulation signed by counsel” in compliance with Code § 20-109(0 and “clearly not modifiable under the terms contained therein.”
The trial judge rejected husband’s motion, finding that the consent decree was “a stipulation that was entered into and reduced to the form of an order by the parties.” The attorneys signed the decree on their clients’ behalf. “This is not the court’s order,” the judge explained, “this is the parties’ order.” And because it was an “agreement between the parties,” the judge held, it could not be terminated or modified except pursuant to its contractual terms. Nothing in the consent decree provided either party with such a right. For these reasons, the trial court denied husband’s “Motion to Eliminate and/or Reduce Spousal Support.”
II.
The underlying principle at issue in this appeal can be simply stated: “Code § 20-109(A) empowers trial courts to modify a spousal support award, but Code § 20-109(C) expressly limits the court’s authority to modify an agreed upon spousal support award according to the terms of a stipulation or contract signed by the parties.” Blackburn v. Michael, 30 Va.App. 95, 100, 515 S.E.2d 780, 783 (1999). This case requires us to decide whether an agreement setting the amount of spousal support — embodied in a consent decree signed by counsel on behalf of their respective clients — qualifies as a stipulation or contract under Code § 20-109(C) for purposes of giving it the one critical quality that most legally binding agreements ordinarily have: They cannot be rewritten by the courts. For the following reasons, we hold that it does.
A. The Consent Decree Was A “Stipulation or Contract. ”
The trial judge held that the consent decree was not only an “agreement between the parties,” but one that rose to the level of a “stipulation that was entered into and reduced to *563 the form of an order by the parties.” (Emphasis added). The trial judge’s characterization of the consent decree rests on the widely accepted proposition that a stipulation is “an agreement between counsel respecting business before a court.” Burke v. Gale, 193 Va. 130, 137, 67 S.E.2d 917, 920 (1951) (quoting Black’s Law Dictionary 1660 (3d ed. 1933) (“Stipulation”)); see also Lane v. Lane, 32 Va.App. 125, 129, 526 S.E.2d 773, 775 (2000); Orlandi v. Orlandi, 23 Va.App. 21, 26, 473 S.E.2d 716, 719 (1996) (recognizing that a “consent decree is a contract or agreement between the parties to the suit, entered of record in the cause with the consent of the court, and is binding”); Durrett v. Durrett, 204 Va. 59, 63, 129 S.E.2d 50, 53 (1963) (same); Barnes v. Am. Fertilizer Co., 144 Va. 692, 720, 130 S.E. 902, 911 (1925) (same); see generally Restatement (Second) of Contracts: Stipulations § 94 (1981).
It was exactly this understanding of “stipulation” that we adopted in Lane for purposes of interpreting Code § 20-109(C). Lane, 32 Va.App. at 129, 526 S.E.2d at 775. It stems from the observation that, with consent decrees, the parties obviously reach their “agreement before the decree” and thus “the decree merely formalize[s] the obligations already assumed.” Schmidt v. Schmidt, 6 Va.App. 501, 505, 370 S.E.2d 311, 313 (1988). Under Code § 20-109.1, a trial court may “incorporate” by reference contractual provisions into any decree either before or after the entry of a final order. All the more, a trial court may incorporate verbatim the terms of an agreement into the very text of a consent decree. The trial court, therefore, did not err in holding that the consent decree constitutes a “stipulation or contract” under Code § 20-109(C).
B. The “Stipulation or Contract” Was Signed By The Parties Through Their Attorneys Acting With Actual Authority.
Code § 20-109(C) requires that the “party to whom such relief might otherwise be awarded” sign the stipulation or contract. In this case, husband concedes that both attorneys, acting with actual authority, signed the consent decree on *564 their respective clients’ behalf. During oral argument before us, husband’s counsel made plain that he has “never contested” either attorney’s authority to sign the consent decree in that representative capacity. There can be no question, therefore, that counsel signed the decree as authorized agents acting on behalf of their principals.
Husband nevertheless claims that we should make a distinction between consent decrees signed by attorneys on their clients’ behalf and those signed by the clients personally. Relying on Lane, husband asserts that Code § 20-109(C) codified this distinction. See Lane, 32 Va.App. at 129, 526 S.E.2d at 775 (stating that a consent decree signed by both counsel on behalf of their clients was a decree “signed by neither party”). We disagree for two reasons. First, we view Lane’s endorsement of that distinction as dicta having no stare decisis weight. Second, the Lane distinction requires an interpretation of the signature requirement in conflict with settled principles of statutory construction.
(i). Stare Decisis Does Not Apply To The Lane Dicta.
A closer look at the actual holding in Lane demonstrates that its language about who has to sign the decree is dicta. In Lane, the parties entered into a spousal support agreement memorialized in a final divorce decree entered in 1988. Counsel for the parties signed the agreed decree, but their clients did not. In 1989, the parties entered into a “subsequent agreement” and submitted a new consent order memorializing it. Lane, 32 Va.App. at 128, 526 S.E.2d at 775. This time, however, the wife personally endorsed the order. After the trial court entered the consent order, it became the “governing agreement between the parties.” Id. at 130, 526 S.E.2d at 776.
Eight years later, in 1997, the husband in Lane filed a petition under Code § 20-109 to modify or terminate his support obligation due to changed circumstances. The trial court stated that it had the authority to modify or terminate support, but declined to exercise that authority because the evidence did not prove that circumstances had changed *565 enough to support the petition. Both the wife and husband appealed: the wife complained about the trial court’s reasoning, the husband about the court’s result.
Lane held that the trial court reached the right result, but for the wrong reason. The right reason, Lane explained, was that with or without changed circumstances, Code § 20-109(C) forbids modification or termination of support unless consistent with the parties’ agreement. The “governing agreement” was the 1989 consent order signed personally by the wife as the payee party. Id. at 130, 526 S.E.2d at 776. And it did not authorize modification or termination under the circumstances alleged.
In the course of the opinion, however, Lane also addressed whether the original divorce decree entered in 1988 satisfied Code § 20-109(C). Id. at 129, 526 S.E.2d at 775 (referencing former § 20-109(B), which contained the requirements now found in § 20-109(0). Lane opined that the original 1988 decree violated Code § 20-109(0 because the parties’ counsel, not the parties themselves, signed it. Neither the holding nor the ratio decidendi of Lane required any examination of whether the earlier agreement memorialized in the 1988 decree — the non-governing agreement superceded by the 1989 consent order — complied with the signature requirement of Code § 20-109(C). It made no difference whether it did or not. Whether the wife’s lawyer could sign the 1988 decree as an agent on her behalf was irrelevant because the wife personally signed the 1989 consent order.
Stare decisis cannot be properly applied without “the need to distinguish an opinion’s holding from its dicta.” United States Nat’l Bank of Ore. v. Indep. Ins. Agents of Am., Inc., 508 U.S. 439, 463 n. 11, 113 S.Ct. 2173, 2186 n.11, 124 L.Ed.2d 402 (1993). Dicta in a prior decision generally refers to that portion of an opinion “not essential” to the disposition in the case. Cent. Green Co. v. United States, 531 U.S. 425, 431, 121 S.Ct. 1005, 1009, 148 L.Ed.2d 919 (2001) (characterizing a portion of a prior opinion as “unquestionably dictum *566 because it was not essential to our disposition”).[1] As the Virginia Supreme Court has explained:
It is a maxim not to be disregarded, that general expressions, in every opinion, are to be taken in connection -with the case in which these expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in the subsequent suit when the very point is [involved] for decision.
Va. Ry. & Power Co. v. Dressier, 132 Va. 342, 350-51, 111 S.E. 243, 245-46 (1922) (Burks, J.) (quoting Cohens v. Virginia, 19 U.S. (6 Wheat.) 264, 399, 5 L.Ed. 257 (1821) (Marshall, C.J.)). Dicta cannot “serve as a source of binding authority in American jurisprudence.” United States v. Pasquantino, 336 F.3d 321, 329 (4th Cir.2003) (en banc ).[2]
(ii). The Signature Requirement
Code § 1-10 preserves the common law as the “rule of decision” except when “altered by the General Assembly.” Absent a clearly expressed legislative intent otherwise, statutes should not be construed to displace long-established common law principles. Herndon v. St. Mary’s Hosp., Inc., 266 Va. 472, 476, 587 S.E.2d 567, 569 (2003); Patten v. Commonwealth, 262 Va. 654, 658, 553 S.E.2d 517, 519 (2001); Melanson v. Commonwealth, 261 Va. 178, 181, 539 S.E.2d 433, 434 (2001). “Abrogation of the common law requires that the *567 General Assembly plainly manifest an intent to do so.” Linhart v. Lawson, 261 Va. 30, 35, 540 S.E.2d 875, 877 (2001).
Under the common law of agency, the signature of a disclosed, authorized agent has the same legal force as the signature of his principal. Unless the facts show otherwise, a contractual instrument should be “interpreted as the instrument of the principal and not of the agent if, in the signature or description of the parties, the name of the principal and agent both appear, the agent indicating his agency.” Restatement (Second) of Agency § 156 (1958). Consequently, “[a]ny' signature or description from which it appears that the parties intend that the principal and not the agent shall be a party is efficacious in creating an inference that the principal is a party.” Id. § 156 cmt. a; see also E. Allan Farnsworth, 2 Farnsworth on Contracts § 6.8 (2d ed.2001) (recognizing that a “party’s signature may be made by an agent”).
Common law agency principles apply to the attorney-client relationship. See, e.g., Va. Elec. & Power Co. v. Bowers, 181 Va. 542, 547, 25 S.E.2d 361, 363 (1943) (noting that “an attorney is the agent of his client”); cf. Walson v. Walson, 37 Va.App. 208, 214-16, 556 S.E.2d 53, 56-57 (2001) (discussing common law agency principles, specifically those distinguishing actual from apparent authority, in the context of an attorney-client relationship). To be sime, in various contexts (Rule 5A:18 waivers, open-court stipulations, proffers from counsel, to name a few), we often treat an attorney as legally synonymous with his or her client. Any other view would be “wholly inconsistent with our system of representative litigation,” Link v. Wabash R.R. Co., 370 U.S. 626, 634, 82 S.Ct. 1386, 1390, 8 L.Ed.2d 734 (1962), in which an attorney serves as an “agent when acting, or failing to act, in furtherance of the litigation,” Coleman v. Thompson, 501 U.S. 722, 753, 111 S.Ct. 2546, 2567, 115 L.Ed.2d 640 (1991) (citation omitted).
Nothing in Code § 20-109(C) displaces these common law principles. The statutory requirement that the parties sign the agreement does not, either linguistically or legally, exclude them from doing so through their attorneys. The very use of *568 the term “stipulation” implies that counsel may sign on their clients’ behalf. While it could involve an agreement between pro se parties, more often than not a “stipulation contemplates ‘an agreement between counsel respecting business before a court.’ ” Burke, 193 Va. at 137, 67 S.E.2d at 920 (citation omitted and emphasis added); see also Lane, 32 Va.App. at 129, 526 S.E.2d at 775.
Moreover, subsections A and B of § 20-109 authorize either “party” to file modification petitions in court. Under husband’s interpretation, this would exclude the party’s counsel from performing this task on behalf of the client — a near universal practice in our courts. Such an interpretation would hardly be in keeping with the longstanding principle that “when the same word is used in different parts of the same statute, the presumption is that it was used in the same sense throughout the statute, unless a contrary intention clearly appears.” Bridgewater Mfg. Co. v. Funkhouser, 115 Va. 476, 480, 79 S.E. 1074, 1076 (1913); see also Bd. of Supervisors of Albemarle County v. Marshall, 215 Va. 756, 761-62, 214 S.E.2d 146, 150 (1975); Weaver v. Commonwealth, 25 Va.App. 95, 101, 486 S.E.2d 558, 561 (1997).
For these reasons, we hold that an attorney acting with actual authority may sign a consent decree on his client’s behalf and thereby satisfy the signature requirement of Code § 20-109(C).
C. The “Stipulation or Contract” Does Not Expressly Authorize Judicial Modification Or Termination.
We apply ordinary principles of contract law when construing a “stipulation or contract” under Code § 20-109(C). “While a consent decree is a court order, it is ‘contractual in its nature and should be construed as though it were a contract.’” Gazale v. Gazale, 219 Va. 775, 779, 250 S.E.2d 365, 367 (1979) (quoting Culpeper Nat’l Bank v. Morris, 168 Va. 379, 385, 191 S.E. 764, 767 (1937)).[3] Absent equitable *569 grounds warranting rescission, a contract cannot be judicially modified or terminated at the unilateral request of a contract party unless the agreement expressly authorizes such relief. The same is true for a consent decree. See 11A Michie’s Jurisprudence of Virginia & West Virginia, Judgments & Decrees § 174, at 268 (1997) (“From the very nature of the consent judgment or decree it cannot be altered or modified except by consent, unless there has been a clerical mistake.”).
The “except in accordance with that stipulation or contract” proviso in Code § 20-109(0 applies this general maxim of contract law to consensual spousal support awards. In doing so, the statute requires the proponent of the requested modification or termination to show that the “stipulation or contract” authorizes such relief. Code § 20-109(C). “This provision of Code § 20-109,” the Virginia Supreme Court has often explained, “inhibits the power of the court to award or consider modification of the decree to the extent that spousal support and maintenance are provided for in the incorporated agreement of the parties.” White v. White, 257 Va. 139, 144, 509 S.E.2d 323, 325 (1999).[4] In this way, Code § 20-109 offers *570 to contractual spousal support “the great advantage of the stability and the protection against modification or elimination” by the courts. Smith v. Smith, 41 Va.App. 742, 747, 589 S.E.2d 439, 441 (2003).
Subsections A and D of § 20-109 reverse that sequence in cases involving cohabitation, remarriage, or death. See Smith, 41 Va.App. at 743-44, 589 S.E.2d at 439-40. In such cases, the stipulation or contract must expressly preclude termination of the contractual duty of spousal support on these grounds. If it fails to do so, the contractual obligation may be terminated. See Hardesty v. Hardesty, 40 Va.App. 663, 581 S.E.2d 213 (2003) (en banc). For all other possible grounds, however, the burden remains on the party seeking to back out of the contractual duty of spousal support.
In this case, husband seeks to “Eliminate and/or Reduce” his contractual duty of spousal support on grounds other than cohabitation, remarriage, or death. As a result, he correctly acknowledges, if his agreement does not “retain modifiability” then “by default” it remains non-modifiable. Though conceding this principle, however, husband finds fault with the trial court’s application of it to the consent decree. Under husband’s interpretation, the consent decree expressly authorizes judicial modification and termination of the duty to pay spousal support by stating that it would be “continuing as provided in Virginia Code §§ 16.1-278.15 and 20-109.”
The trial court correctly held this clause did no such thing. The reference to Code § 16.1-278.15 deals with child support. The oblique reference to Code § 20-109 deals with spousal support, but tells us nothing other than the statute applies to the consent decree — an axiomatic proposition that, in any event, begs the question. Of course the statute applies. The question is whether the contracting parties intended this phrase to strip the consent decree of its contractual character, *571 giving it the status of a mere contested decree subject to being judicially changed or vacated over the objection of one of the parties. The answer to that question must be no. A cryptic reference to Code § 20-109 does not tell us whether the consent decree was to remain a contract immune from modification under subsection C or to become a mere order subject to modification under subsection A.
The Virginia Supreme Court dealt with an analogous situation in McLoughlin v. McLoughlin, 211 Va. 365, 367, 177 S.E.2d 781, 782 (1970). There, the parties entered into a settlement agreement expressly “in accordance with Title 20, paragraph 109, of the Code of Virginia of 1950, as amended.” The trial court merged this agreement into a consent decree and made “every part thereof incorporated and made a part of this decree by this reference.” Id. at 366, 177 S.E.2d at 782. Refusing the husband’s later request that the support be terminated, the Supreme Court held that the reference to Code § 20-109 did not authorize judicial interference with the contractual duty of support because the very statute cited included a “proviso” forbidding such relief “except in accordance with” the stipulation or contract. McLoughlin, 211 Va. at 367, 177 S.E.2d at 782.[5]
In this case, as in McLoughlin, the mere mention of Code § 20-109 falls far short of demonstrating that the contracting parties intended to authorize future judicial modifications to, or outright terminations of, the contractual duty to pay spousal support. To be sure, if a simple reference to the statute were to connote anything, it would be the opposite. “The statute was enacted to require that decrees for support honor agreements made by the parties; it prevents a court from rewriting the parties’ contract. It stands as a clarion pronouncement of the policy encouraging settlement by agreement.” Smith, 41 Va.App. at 751, 589 S.E.2d at 443.
*572 III.
The trial court did not err in denying husband’s “Motion to Eliminate and/or Reduce” his contractual obligation to pay spousal support. We thus affirm its decision.

Affirmed.

This matter comes before the Court pursuant to Code § 17.1-402(D) (“The Court may sit en banc upon its own motion at any time, in any case in which a majority of the court determines it is appropriate to do so.”).

. Stare decisis "applies not merely to the literal holding of the case, but also to its ratio decidendi — the essential rationale in the case that determines the judgment.” Clinchfield Coal Co. v. Reed, 40 Va.App. 69, 73-74, 577 S.E.2d 538, 540 (2003). In other words, "it is not only the result but also those portions of the opinion necessary to that result by which we are bound.” Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 67, 116 S.Ct. 1114, 1129, 134 L.Ed.2d 252 (1996).

. See also Alexander v. Sandoval, 532 U.S. 275, 282, 121 S.Ct. 1511, 1517, 149 L.Ed.2d 517 (2001) (recognizing that under stare decisis, courts are "bound by holdings, not language”); Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 379, 114 S.Ct. 1673, 1676, 128 L.Ed.2d 391 (1994) (noting that "[i]t is to the holdings of our cases, rather than their dicta, that we must attend”); United States v. Dixon, 509 U.S. 688, 706, 113 S.Ct. 2849, 2861, 125 L.Ed.2d 556 (1993).

. See also United States v. ITT Cont'l Baking Co., 420 U.S. 223, 236, 95 S.Ct. 926, 934, 43 L.Ed.2d 148 (1975) (observing that “since consent *569 decrees and orders have many of the attributes of ordinary contracts, they should be construed basically as contracts”); Anita’s New Mexico Style Mexican Food v. Anita's Mexican Foods Corp., 201 F.3d 314, 319 (4th Cir.2000) (recognizing that "rules of contract construction” should be used "when determining the scope of a consent decree”).

. See also Lindsay v. Lindsay, 218 Va. 599, 604, 238 S.E.2d 817, 820 (1977) (recognizing the power to modify where the trial court had "been authorized by the consent order to make changes in the provisions for support”); Harris v. Harris, 217 Va. 680, 681, 232 S.E.2d 739, 741 (1977) (holding trial court erred by "eliminating” spousal support payments required by an agreement incorporated into a consent decree); Thomas v. Thomas, 216 Va. 741, 743, 222 S.E.2d 557, 558-59 (1976) (noting that, under the "proviso” in Code § 20-109, the trial court’s authority is “expressly limited” by statute from any judicial modification “except in accordance with that stipulation or contract” between the parties); Dienhart v. Dienhart, 210 Va. 101, 102, 168 S.E.2d 279, 281 (1969) (noting that Code § 20-109 "inhibits the usual power of the court to modify” court ordered spousal support payments); Fleming v. Fleming, 32 Va.App. 822, 826, 531 S.E.2d 38, 40 (2000) ("Furthermore, under Code § 20-109, when a contract between the parties is filed before entry of the final decree, the trial judge may *570 not enter an order or decree for spousal support except in accordance with that contract.” (citing White v. White, 257 Va. 139, 144, 509 S.E.2d 323, 325 (1999))).

. Code § 20-109, since McLoughlin, has been amended and subdivided in ways unrelated to our application of it here.