**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 07-1594

MARIAN HERDER,

Plaintiff - Appellee,

v.

DOUGLAS SIMMS,

Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Gerald Bruce Lee, District Judge. (1:06-cv-01140-GBL)

Argued: May 15, 2008               Decided: June 12, 2008

Before SHEDD, Circuit Judge, HAMILTON, Senior Circuit Judge, and Terry L. WOOTEN, United States District Judge for the District of South Carolina, sitting by designation.

Reversed by unpublished per curiam opinion.

**ARGUED:** Wyatt B. Durrette, Jr., DURRETTEBRADSHAW, PLC, Richmond, Virginia, for Appellant. Kenneth A. Martin, MARTIN & ASSOCIATES, PLLC, McLean, Virginia, for Appellee. **ON BRIEF:** Christine A. Williams, Halliday Moncure Merrick, DURRETTEBRADSHAW, PLC, Richmond, Virginia, for Appellant.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Douglas Simms (Simms), the defendant in a breach of contract action under Virginia law, appeals from the district court's entry of judgment in favor of the plaintiff, Marian Herder (Herder), following the district court's grant of Herder's motion for summary judgment. We reverse.

I.

The parties executed the contract at issue (the Contract), on February 4, 2005, which provided for the sale of a thirty-seven acre tract of real property located in Spotsylvania County, Virginia (the Property). Herder, a citizen of Pennsylvania, was the seller under the Contract, and Simms, a citizen of Virginia, was the purchaser. The parties executed the Contract after an auction of the Property conducted by Herder's agent, Daniel Mastin, III (Agent Mastin). (J.A. 42). The Contract set the total purchase price at $1,000,000.00.

Per the Contract, Simms paid Herder a ten percent deposit of $100,000.00, to be held in escrow until closing. Agent Mastin held the entire $100,000.00 deposit in escrow, and according to Herder's arrangement with Agent Mastin, Agent Mastin would retain $50,000.00 of such deposit as his auction commission upon closing. The Contract also provided that, in the event Simms defaulted on the

Contract, Simms "shall forfeit the deposit and the deposit shall be equally divided between [Herder] and [Agent Mastin] . . . ." Id.

Of relevance to the issues on appeal, Paragraph 4 of the Contract states, in pertinent part:

> BUYER shall have the right to have the title examined prior to closing and shall notify SELLER promptly of any defect rendering title to the property unmarketable. In the event such defect cannot be cured within a reasonable time, or SELLER elects not to cure the same, SELLER not being so required; then this contract may, at the option of BUYER, be cancelled before closing, and it is specifically agreed that the BUYER'S sole remedy shall be the return of the hereinabove deposit, without interest, and this contract and all rights and obligations of the Parties hereto, shall be terminated and of no further force and effect. In the event that the BUYER defaults on this contract and does not proceed to closing, then the BUYER shall forfeit the deposit and the deposit shall be equally divided between the SELLER and the AGENT . . . .

Id.

The Contract required "closing" the transaction "within 90 days [of execution], unless extended to a later date by a mutual consent of all parties. TIME IS OF THE ESSENCE." Id. Thus, according to the terms of the Contract, the closing had to occur no later than May 5, 2005. However, shortly after the auction, Herder orally notified Agent Mastin that she wanted to delay the closing until later in the year out of concern for her capital gains tax liability. Agent Mastin relayed Herder's desire to delay the

closing date to Simms, who orally agreed to extend the closing date past May 5, 2005.[1]

At some point after May 5, 2005, Herder notified Agent Mastin that she had changed her mind and now desired to close the transaction sooner rather than later. After Agent Mastin relayed Herder's latest desire to Simms, Simms began taking the necessary steps to close. On or about May 17, 2005, the parties agreed to close the transaction during a closing conference scheduled for June 6, 2005, at the Fredericksburg, Virginia law office of Simms' attorney, H. Glenn Goodpasture (Attorney Goodpasture).

Shortly before the June 6, 2005 closing conference, a title search was performed. The title paperwork contained information about certain out-conveyances off a forty-five acre tract. Attorney Goodpasture assumed that the out-conveyances did not impact the thirty-seven acre tract that Simms was purchasing and, according to Attorney Goodpasture, the title paperwork contained nothing to suggest otherwise. When Herder and her attorney, David Still (Attorney Still), arrived at Attorney Goodpasture's office for the closing conference on June 6, 2005, Attorney Goodpasture showed them a plat of the Property as described in the Contract, which plat had been created on behalf of Simms to confirm that it

---

[1]According to Herder's brief in the present appeal: "By the terms of the contract, the Parties were allowed to mutually agree to extend the Closing Date. Therefore, Herder and Simms acted in accord with the contract when they verbally agreed to extend the Closing Date . . . ." (Herder's Br. at 7).

- 4 -

accurately depicted the property to be conveyed under the Contract.[2]

Herder then advised Attorney Goodpasture that the plat was incorrect, as she had previously conveyed two smaller parcels out of the Property.  Neither Herder nor her attorney could accurately identify the location of these out-conveyances on the plat.  At that point, Attorney Goodpasture could not determine exactly what property Herder was going to convey, what property Simms was going to purchase, or on what property the bank would get a lien.[3]  The

---

[2]Per the customary arrangement between Simms and Attorney Goodpasture, Simms did not plan to physically attend the closing conference on June 6, 2005.  Under this customary arrangement, Simms executes his necessary paperwork and transfers the necessary funds to Attorney Goodpasture prior to the closing conference.

[3]With respect to when Attorney Goodpasture first learned of the title defects created by the two out-conveyances, Attorney Goodpasture testified during his deposition in this case, without contradiction, as follows:

> The survey which reached me very late in the transaction, I don't know if it got to me at all before the 6th, but [Simms' lender] was requiring that the survey be recorded as a part of the transaction. . . .  And in reviewing the survey with the seller and with the title search, the seller told me that the survey was not accurate, that there was property that she had conveyed off of that tract of land which was not -- which was included within the survey, that it wasn't accurate. . . .
>
> *   *   *
>
> At the settlement table the title company had not provided me with copies of the deeds of off-conveyance. I did not have them.  That's probably why I didn't know what was being conveyed and what was being purchased.

(J.A. 178, 181).

evidence in the summary judgment record is undisputed that Herder, her attorney, and Attorney Goodpasture consequently agreed to try to resolve the confusion created by these out-conveyances and then close as soon as reasonably practical. Notably, the summary judgment record contains the deposition testimony of Herder herself, testifying that she left the closing conference on June 6, 2005, "with the understanding that things had to be fixed in order for the deal to be completed[.]" (J.A. 170). Moreover, Herder testified that although she could not explain exactly what such a fix entailed, "[she] kn[e]w it had to be fixed." Id. Herder left the June 6, 2005 closing conference with the deed to the Property still in her possession.

During the next few days, the location and size of the two out-conveyances were determined to be: (1) 0.723 acres conveyed to Reginald S. Tyler, by deed recorded on January 19, 2005; and (2) 2.00 acres conveyed to Catherine M. Dunbar, by deed recorded on February 11, 2005 (a week after the parties executed the Contract). After several telephone conversations between Attorney Goodpasture and Attorney Still, the two attorneys reached a proposed agreement to resolve the title defect issues, which each attorney would recommend to his respective client. Attorney Goodpasture then drafted a document memorializing the proposed agreement, which document he forwarded to Attorney Still by letter dated June 9, 2005.

By letter dated June 23, 2005, addressed to Agent Mastin with a copy to Attorney Goodpasture, Herder (through her attorney) attempted to declare Simms in default of the Contract for failing to close within ninety days of February 4, 2005.  Herder further insisted in the letter that Simms had thereby forfeited his $100,000.00 deposit being held in escrow by Agent Mastin and demanded that Agent Mastin disburse half of Simms' $100,000.00 deposit to her, per the terms of Paragraph 4 of the Contract.

On October 10, 2006, Herder filed the present federal court action against Simms, based upon diversity of citizenship jurisdiction.  The sole cause of action at issue in the present appeal is Herder's breach of contract claim under Virginia common law alleging that Simms breached the Contract by failing to notify her of any title defects prior to the closing conference on June 6, 2005 and by failing to close on the Property on June 6, 2005.  As a remedy, Plaintiff sought $50,000.00 (half of Simms' $100,000.00), plus prejudgment interest, at the statutory rate, commencing on May 5, 2005.[4]

Herder made a motion for summary judgment with respect to her breach of contract claim, which the district court ultimately granted.  In so granting, the district court reasoned that Simms was contractually obligated to close the transaction no later than

---

[4]Herder also asserted a claim alleging slander of title, upon which the district court ultimately entered judgment in favor of Simms.

June 6, 2005, regardless of the title defects, because although Simms knew (through his attorney) of the title defects prior to the June 6, 2005 closing conference, he failed to notify Herder of any such defects prior to that conference. The district court entered final judgment in favor of Herder in the amount of $50,000.00, plus prejudgment interest, at the statutory rate, commencing May 5, 2005. This timely appeal followed.

## II.

The crux of Simms' position on appeal is that he cannot be held to have breached the Contract by failing to close the transaction on June 6, 2005, when the uncontradicted evidence shows that, on June 6, 2005, the parties mutually agreed to delay closing the transaction until as soon as reasonably practical in order to clear up the title defects regarding the out-conveyances. We review <u>de novo</u> the district court's grant of summary judgment in favor of Herder, applying the same standard as did the district court and construing the facts in the light most favorable to Simms, the nonmoving party. <u>See</u> <u>Holland v. Washington Homes, Inc.</u>, 487 F.3d 208, 213 (4th Cir. 2007). Summary judgment is appropriate when the evidence demonstrates that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

After carefully considering the summary judgment record, we hold that <u>even viewing the evidence in the light most favorable to Herder</u>, no reasonable juror could find that Simms breached the Contract by failing to close the transaction by June 6, 2005. The Contract required a closing date "within 90 days [of execution], **unless extended to a later date by a mutual consent of all parties**." (J.A. 42) (emphasis added). Herder agrees that she and Simms mutually agreed to extend the first closing date from May 5, 2005 to June 6, 2005. With respect to whether the parties mutually agreed to extend the closing date past June 6, 2005, we hold that, even viewing the evidence in the light most favorable to Herder, a reasonable jury could only find that the parties mutually agreed to extend the closing date past June 6, 2005, in order to clear up the title defects created by the two out-conveyances.

First, although Herder argued below, and continues to argue on appeal, that she never agreed to extend the closing date beyond June 6, 2005, her deposition testimony in this case conclusively belies her litigation position. Herder testified that she left the closing conference on June 6, 2005, taking her purported deed of conveyance with her, "<u>with the understanding that things had to be fixed in order for the deal to be completed</u>[.]" (J.A. 170) (emphasis added). She further testified that although she could not explain exactly what such a fix entailed, "<u>[she] kn[e]w it had to be fixed</u>." <u>Id.</u> (emphasis added). No reasonable juror could hear this testimony and

- 9 -

reach any finding other than Herder agreed, at the June 6, 2005 closing conference, to extend the closing date to a time in the near future once the title defects at issue had been cured.

Second, wholly consistent with Herder's just-quoted testimony, the record contains the uncontradicted testimony of Attorney Goodpasture that he, "Ms. Herder[,] and [Attorney] Still . . . discussed the situation and <u>agreed</u> that [they] would in good faith figure out what the fact[s] were, get a correct description of the property, and <u>then close as soon as reasonably practical</u>." (J.A. 187) (emphasis added).

Fatal to Herder's defense of the judgment below is the fact that there is no evidence in the record to contradict either her or Attorney Goodpasture's testimony.[5]  The icing on the cake is the

---

[5]Herder argues that we must ignore Attorney Goodpasture's testimony regarding her agreement to extend the closing date beyond June 6, 2005, because Simms testified during his deposition that he personally was "not aware" of a conversation whereby Herder agreed to extend the closing date past June 6, 2005.  Herder's argument is without merit.  Given the well established principle of Virginia law that "[c]ommon law agency principles apply to the attorney-client relationship," <u>Newman v. Newman</u>, 593 S.E.2d 533, 538 (Va. Ct. App. 2004), the fact that Simms himself did not attend the June 6, 2005 closing conference, and thus did not himself personally agree to extend the closing date beyond June 6, 2005, nor personally witness Herder make such an agreement, is of absolutely no moment in the proper resolution of this appeal.  The record conclusively establishes that Attorney Goodpasture had actual and apparent authority to agree, on behalf of Simms, to extend the closing date beyond June 6, 2005, in order to cure the title defects, and to accept, on behalf of Simms, Herder's agreement to do the same.  <u>C.I.R. v. Banks</u>, 543 U.S. 426, 436 (2005) ("The relationship between client and attorney, regardless of the variations in particular compensation agreements or the amount of skill and effort the attorney contributes, is a quintessential principal-agent relationship.") ("Even where the

- 10 -

timing of Herder's June 23, 2005 letter (through her attorney) attempting to declare Simms in default of the Contract. Herder (through her attorney) did not send this letter until after she received Attorney Goodpasture's June 9, 2005 letter memorializing the proposed agreement that he had hammered out with her attorney to cure the title defects. No reasonable juror could look at the sequence of events in this case and reach any other conclusion but that Herder consented, at the June 6, 2005 closing conference, to extend the date to close the transaction past June 6, 2005, in order to cure the title defects, but then subsequently regretted her decision to consent and, thus, attempted to retract her consent.

In sum, even viewing the evidence in the light most favorable to Herder, a genuine issue of material fact does not exist regarding whether the parties mutually consented to extend the date to close the transaction beyond June 6, 2005. The evidence only admits of one conclusion--i.e., the parties mutually consented to extend the date to close the transaction past June 6, 2005. Therefore, Simms

---

attorney exercises independent judgment without supervision by, or consultation with, the client, the attorney, as an agent, is obligated to act solely on behalf of, and for the exclusive benefit of, the client-principal, rather than for the benefit of the attorney or any other party."); Va. Elec. & Power Co. v. Bowers, 25 S.E.2d 361, 363 (Va. 1943) ("an attorney is the agent of his client" and has the authority to take all lawful steps for the protection of his client's interests). In other words, as long as Attorney Goodpasture, acting as Simms' agent, was aware of Herder's as well as her attorney's agreement to extend the closing date past June 6, 2005 in order to cure the title defects at issue, the fact that Simms was not aware of such facts is not legally relevant.

did not breach the Contract by failing to close the transaction by June 6, 2005.

One final point is worth addressing--<u>i.e.</u>, the fact that Herder and her attorney arrived at the closing conference on June 6, 2005, with the mutual belief that Simms was not claiming that any title defects existed. The district court's breach of contract analysis focused upon Simms' failure to notify Herder of the title defects created by her two previous out-conveyances prior to the June 6, 2005 closing conference. According to the district court, by waiting until the parties were at the closing table to raise the issue of title defects, Simms had waived his right to cancel the Contract and therefore, was required to close the transaction no later than June 6, 2005, regardless of any title defects, or be in breach of the Contract. Herder takes this position on appeal as well.

The critical flaw in both the district court's analysis and Herder's position is that they both rest upon a material misreading of the operative unambiguous language of the Contract. Of relevance to this issue, the Contract provides:

> <u>BUYER shall have the right to have the title examined prior to closing and shall notify SELLER promptly of any defect rendering title to the property unmarketable</u>. <u>In the event such defect cannot be cured within a reasonable time, or SELLER elects not to cure the same, SELLER not being so required; then this contract may, at the option of BUYER, be cancelled before closing</u>, and it is specifically agreed that the BUYER'S sole remedy shall be the return of the hereinabove deposit, without interest, and this contract and all rights and obligations of the

- 12 -

> Parties hereto, shall be terminated and of no further
> force and effect.

(J.A. 42) (emphasis added).  There is no evidence in this case indicating that Attorney Goodpasture, acting as the agent of his client Simms, once learning of the title defects at the June 6, 2005 closing conference, failed to promptly notify Herder or her attorney of such defects.  Moreover, the evidence in the record is undisputed that Attorney Goodpasture notified Herder and her Attorney of the title defects "before closing," thus entitling Simms to cancel the Contract "[i]n the event such defect[s] cannot be cured within a reasonable time, or SELLER elects not to cure the same . . . ." Id.  Indeed, all parties agree that although the parties attended a closing conference on June 6, 2005, a "closing" of the transaction that is the subject of the Contract never took place.  Thus, there is no breach to be found here either.


## III.

In conclusion, because no reasonable juror, viewing the evidence in the light most favorable to Herder, could find that Simms breached the Contract, Herder cannot prevail upon her breach of contract claim as a matter of law.  Accordingly, we reverse the judgment below.  Therefore, Simms is legally entitled to a full and complete return of his $100,000.00 deposit, which, as far as the record discloses, is still being held in escrow by Agent Mastin. To be clear, neither Herder nor Agent Mastin is legally entitled to

any portion of the $100,000 deposit made by Simms.  Any claim Agent Mastin may have which flows from Herder's breach of contract claim is extinguished and in that regard Agent Mastin has no claim to the $100,000 deposit made by Simms.

<u>REVERSED</u>