# CIRCUIT COURT OF FAIRFAX COUNTY

Francine B. Waugh

v.

Max J. Waugh

June 25, 2009

Case No. CL-2008-16342

BY JUDGE CHARLES J. MAXFIELD

This matter came before the Court on June 17, 2009. Defendant asks the Court to terminate his spousal support obligation to Plaintiff ex-Wife under Virginia Code § 20-109(A) based on Plaintiff's cohabitation with another in a relationship analogous to a marriage.

*Issues*

This case presents four issues: first, whether spousal support may be terminated by cohabitation in a relationship analogous to a marriage when cohabitation is not expressly listed as a terminating factor in the PSA; second, whether Plaintiff and another were cohabiting in a relationship analogous to a marriage; third, whether termination of the spousal support would be unconscionable; fourth, whether either party is entitled to attorney's fees.

*Facts*

Defendant Max J. Waugh (hereinafter "Husband") and Plaintiff Francine B. Waugh (hereinafter "Wife") were married on July 31, 1982. By 2004, the parties were experiencing marital difficulties and entered into a

Property, Custody, and Support Settlement Agreement (hereinafter the "PSA") resolving issues arising from the marriage. The parties were divorced by Final Decree on May 25, 2005. The Final Decree of Divorce incorporated the PSA and provided that Husband was to pay Wife spousal support in the amount of $1,500.00 per month until July 2007 and 1,000.00 per month for the next twenty years thereafter.

The PSA stated, "notwithstanding anything contained herein to the contrary, said spousal support payment shall cease upon [Wife's] remarriage, or the death of either party." The PSA further provided that the parties "expressly waive any right to have any Court change or make a different provision for the support and maintenance of the other, whether *pendente lite* or permanent, other than as set forth herein. It is expressly agreed by the parties that the spousal support provisions hereof shall not be subject to any court modifications."

In or around May 2006, Wife began dating David T. Rasmussen. In April 2007, Wife moved herself and all of her belongings into Mr. Rasmussen's home. Wife and Mr. Rasmussen entered into a written lease agreement, requiring Wife to pay $900 per month in rent. The lease restricts the visitors Wife may have at the residence, does not allow her to make alterations to the residence, and requires her to pay a pet deposit if she desires to keep an animal at the residence.

Wife has her own bedroom in the house, but occasionally sleeps in Mr. Rasmussen's bed. There are two full bathrooms in the upstairs living area, but Wife and Mr. Rasmussen share the master bathroom. Wife also keeps some of her clothing in Mr. Rasmussen's bedroom closet, but Wife testified she does not wear these clothes and only keeps them in the closet for storage purposes. Wife has decorated areas of the residence with her family pictures and has her furniture as well as her personalty in various areas of the residence. Two to three times per week, Wife and Mr. Rasmussen eat meals together and cook for one another. Wife and Mr. Rasmussen do their own laundry and clean their respective areas of the residence.

Wife and Mr. Rasmussen have maintained an exclusive, romantic relationship throughout the period of their living together. Wife and Mr. Rasmussen's relationship developed into a sexual relationship shortly after they began dating. However, their sexual intimacy has become less frequent than earlier in the relationship. They spend Thanksgiving and Christmas with one another's families. Both Wife and Mr. Rasmussen testified that they express their love for each other a few times a week. Wife further testified that she "loves" Mr. Rasmussen. They have traveled to Florida twice over the last two summers to visit family, but each paid their own way.

Husband earns $96,000 per year in income and approximately $18,000 per year from his military retirement benefits. Wife earns $15,000 per year in income as a teacher's aide in the Stafford County Public Schools and approximately $18,000 per year as her share of Husband's military retirement benefits. Wife is a licensed massage therapist. She charges $50 per massage, which she performs at Mr. Rasmussen's residence. Wife has a bachelor's degree in psychology from the University of North Carolina but has not pursed any work in this field.

In 2007, Wife purchased a Harley Davidson motorcycle for $12,000. About a year ago, she purchased a 2000 Corvette for $20,000, which she received a $13,000 credit on by trading in a used car. In 2008, Wife purchased a piece of land in southwest Virginia for $68,000 at her mother's urging.

Wife and Mr. Rasmussen do not share any joint accounts. Wife has never called Mr. Rasmussen at work, nor has he called her at work. Mr. Rasmussen pays all of the household bills and the mortgage. Neither is listed as the other's emergency contact, and neither is the beneficiary of the other's retirement or life insurance. Wife and Mr. Rasmussen characterize their living situation as one of economic necessity.

*Analysis*

A. *Virginia Code § 20-109*

The issue of termination for cohabitation under this PSA's language appears to be a matter of first impression in the Commonwealth. Virginia Code § 20-109(A) provides in pertinent part that:

> Upon order of the court based upon clear and convincing evidence that the spouse receiving support has been habitually cohabiting with another person in a relationship analogous to a marriage for one year or more . . . the court shall terminate spousal support and maintenance unless (i) otherwise provided by stipulation or contract or (ii) the spouse receiving support proves by a preponderance of the evidence that termination of such support would be unconscionable.

Virginia Code § 20-109(D) further provides that, "[u]nless otherwise provided by stipulation or contract, spousal support and maintenance shall terminate upon the death of either party or remarriage of the spouse receiving support." One issue in this case is the application of Va. Code § 20-109 to the terms of a

property settlement agreement which stated expressly that spousal support payment shall cease upon the death of either party or the wife's remarriage, but did not mention the effect of the wife's cohabitation with another in a relationship analogous to a marriage.

Although Va. Code § 20-109(A) and Va. Code § 20-109(D) set forth different terminating events, the same qualifying language governs both sections, "unless otherwise provided by stipulation or contract." The only difference between Va. Code § 20-109's treatment of cohabitation, as compared to remarriage or death, are that (1) cohabitation must be proven by clear and convincing evidence, and (2) termination based on cohabitation will be precluded if the spouse receiving support proves by a preponderance of the evidence that termination of such support would be unconscionable. Va. Code Ann. § 20-109(A) (2008).

In *Hardesty v. Hardesty*, 40 Va. App. 663, 669, 581 S.E.2d 213, 216 (2003), the Court of Appeals held that the terminating events set forth in Va. Code § 20-109(D) must be expressly contracted around to avoid the termination of spousal support. In reaching their decision, the *Hardesty* Court relied on previous decisions from the Court of Appeals. *See MacNelly v. MacNelly*, 17 Va. App. 427, 430, 437 S.E.2d 582, 584 (1993) (holding "[a]ny attempt to abrogate the effect of [Va. Code § 20-109] requires *express* language either citing the statute or *expressly* stating that remarriage does not terminate the obligation) (emphasis added); *Radford v. Radford*, 16 Va. App. 812, 813, 433 S.E.2d 35, 36 (1993) (holding that the language of Va. Code § 20-109 "contemplates an express, not implied, provision that spousal support shall not terminate upon death or remarriage").

In *Hardesty*, the agreement provided that the husband's spousal support obligation "cannot be terminated for any reason." *Hardesty*, 40 Va. App. at 665, 581 S.E.2d at 215. The wife sought a declaratory judgment that the PSA precluded the termination of the husband's spousal support obligation upon her remarriage. *Id.* at 666, 581 S.E.2d at 215. The trial court disagreed and the wife appealed. *Id.* at 666-67, 581 S.E.2d at 215. In affirming the trial court's decision, the Court of Appeals held that the language of the PSA was not sufficiently specific to avoid the operation of Va. Code § 20-109. *Id.* at 669-70, 581 S.E.2d at 216-17. The Court concluded that, to overcome the application of Va. Code § 20-109, the agreement must "explicitly evinc[e] the parties' intent." *Id.* at 669, 581 S.E.2d at 216. The Court further noted that the legislature has twice amended Va. Code § 20-109, but neither of the these amendments has given the Court an "indication of a desire to change [the Court's] long-standing interpretation of the statute." *Id.* The Court also addressed the public policy implications that would result if Va. Code § 20-

109 could be avoided by an implied provision: "to permit [Code § 20-109's] mandate to be overcome by implication would introduce ambiguity, encourage litigation, and, thereby, undermine the statute's purpose." *Id.* at 669-70, 581 S.E.2d at 217 (quoting *Radford*, 16 Va. App. at 813, 433 S.E.2d at 36).

In subsequent cases, the Court of Appeals has interpreted *Hardesty* to apply to all the terminating events set forth in Va. Code § 20-109. *See Newman v. Newman*, 42 Va. App. 557, 570, 593 S.E.2d 533, 540 (2004) (stating "the stipulation or contract must expressly *preclude* termination of the contractual duty of spousal support . . . [i]f it fails to do so, the contractual obligation may be terminated."); *Baldwin v. Baldwin*, 44 Va. App. 93, 101, 603 S.E.2d 172, 175 (2004) (stating "when one of the statutory bars in Code § 20-109 applies, *Hardesty* requires that the agreement 'expressly *preclude* termination of the contractual duty of spousal support' "). The Court of Appeals has made it clear that the terminating events set forth in Va. Code § 20-109 must be expressly and specifically excluded by the parties' agreement if a spousal support obligation is to withstand the occurrence of one of the terminating events.

Wife's two arguments are without merit. First, Wife argues, since there is no mention of cohabitation in the PSA, but there is mention of death and remarriage, the Court should infer that it was the parties' intent to exclude cohabitation as a terminating event. The Court of Appeals has made it clear that to avoid the terminating events set forth in Va. Code § 20-109, the PSA must contain an express, not implied, provision. *See MacNelly*, 17 Va. App. at 429, 437 S.E.2d at 584. Second, Wife argues that terminating spousal support would constitute a "modification" by the Court, which is not allowed under Paragraph 29(c) of the PSA. In *Newman*, the parties signed a non-modifiable consent decree that awarded the wife spousal support. *Newman*, 42 Va. App. at 561-62, 593 S.E.2d at 535-36. The Court of Appeals affirmed the trial court's decision not to modify or terminate the spousal support agreement because the consent decree expressly prohibited judicial modification. *Id.* at 562, 593 S.E.2d at 536. However, the husband sought to reduce or eliminate spousal support on grounds other than cohabitation, remarriage, or death. *Id.* at 570, 593 S.E.2d at 540. Had the husband stated a ground for termination of spousal support on one of these grounds, the Court would have been authorized to terminate his spousal support obligation. *Id.* Therefore, this Court is authorized to terminate Husband's spousal support obligation although the PSA explicitly prohibits judicial modification.

Therefore, Husband's spousal support is terminable if Wife has been cohabiting with another in a relationship analogous to a marriage for one year or more even though cohabitation was not listed as a terminating event in the PSA.

B. *Cohabitation*

In *Schweider v. Schweider*, the Supreme Court of Virginia stated:

We have said that the term "cohabit" means "to live together in the same house as married persons live together, or in the manner of husband and wife." *Johnson v. Commonwealth*, 152 Va. 965, 970, 146 S.E. 289, 291 (1929). While engaging in sexual relations is a factor in determining cohabitation, " 'matrimonial cohabitation' consists of more than sexual relations. It also imports the continuing condition of living together and carrying out the mutual responsibilities of the marital relationship." *Petachenko v. Petachenko*, 232 Va. 296, 299, 350 S.E.2d 600, 602 (1986).

243 Va. 245, 248, 415 S.E.2d 135, 137 (1992).

In *Pellegrin v. Pellegrin*, 31 Va. App. 753, 525 S.E.2d 611 (2000), the Court of Appeals articulated four non-exclusive factors indicative of the "mutual responsibilities of the marital relationship." It is left to the trial court's discretion to determine what weight to accord each of the following factors. *Id.* at 617, 31 Va. App. at 766.

(1) "Common residence." *Pellegrin* at 764, 525 S.E.2d at 616. It is apparent from the undisputed facts in the present case that Wife and Mr. Rasmussen share a common residence. Wife moved into Mr. Rasmussen's residence in April 2007 and has lived there ever since. She pays Mr. Rasmussen a monthly rent of $900. Wife moved all of her furniture and personalty into Mr. Rasmussen's residence when she moved in. Both Wife and Mr. Rasmussen testified that there are no plans for Wife to move out.

(2) "Intimate or romantic involvement." *Pellegrin* at 764, 525 S.E.2d at 616. It is apparent from the evidence that Wife and Mr. Rasmussen are involved in an intimate or romantic relationship. Wife and Mr. Rasmussen began dating in 2006 and became "exclusive" shortly thereafter. Wife testified that she "loves" Mr. Rasmussen and tells him this a few times a week. Although Wife and Mr. Rasmussen were sexually intimate frequently at the beginning of their relationship, their sexual intimacy has become less frequent. However, both Wife and Mr. Rasmussen testified that they had sex just prior to their depositions taken in April 2009. Further, even though Wife has her own bedroom at Mr. Rasmussen's residence, she occasionally sleeps in Mr. Rasmussen's bed.

(3) "The provision of financial support." *Pellegrin* at 765, 525 S.E.2d at 617. Wife places a heavy emphasis on the lease agreement between her and Mr. Rasmussen and argues that this agreement is probative of the fact that there is no financial support between her and Mr. Rasmussen. Throughout her testimony, Wife was evasive in answering questions regarding her relationship with Mr. Rasmussen. Further, Wife's own witness impeached her on multiple occasions. First, Wife testified she did not have sex with Mr. Rasmussen on their first date. Mr. Rasmussen testified that they did have sex on the first date. Second, Wife testified that Mr. Rasmussen helped her shop for her Corvette only one time. Mr. Rasmussen testified he went with Wife "two or three" times to test-drive Corvettes. These two factors made Wife's testimony less credible. However, the Court of Appeals has stated that financial support is merely one factor that may make a living arrangement "analogous to a marriage." *See Frey v. Frey*, 14 Va. App. 270, 272, 416 S.E.2d 40, 42 (1992). Even so, this element is helpful in this Court's determination of whether Wife and Mr. Rasmussen are cohabiting in a relationship analogous to a marriage.

Wife and Mr. Rasmussen have no joint finances. Wife's only financial contribution to the residence is her monthly rent payment. Both Wife and Mr. Rasmussen classify their living situation as one of economic necessity. Nonetheless, as we have concluded above, Wife is sharing a common residence with Mr. Rasmussen. Mr. Rasmussen admitted he could not afford the residence without Wife's monthly rent payment. Mr. Rasmussen testified that he uses Wife's monthly rent payment to pay the bills at the residence. Moreover, Wife's current living situation is financially the best situation for her. Moreover, although she has been living at Mr. Rasmussen's residence for over two years, her rent has never been increased. The fact that neither person is named as a beneficiary of the other's retirement or life insurance is not a factor in this decision. As the Court of Appeals stated, "[w]e are concerned with present, not future, financial arrangements." *Stroud v. Stroud*, 49 Va. App. 359, 374, 641 S.E.2d 142, 149 (2007). Thus, as both persons receive a substantial economic benefit from the living situation, Husband has shown that Wife and Mr. Rasmussen provide financial support for one another.

(4) "Duration and continuity of the relationship and other indicia of permanency." *Pellegrin* at 765, 525 S.E.2d at 617. It is apparent from the undisputed facts in the present case that Wife and Mr. Rasmussen have the requisite relationship for this element. Wife and Mr. Rasmussen have been involved in an exclusive, romantic relationship for over three years. They have been living together for more than two years. Wife and Mr. Rasmussen spent Christmas and Thanksgiving of 2007 and 2008 with each other and their respective families. Each of the past two summers, they have traveled to

Florida with Wife's daughter to visit Wife's mother and stay in Wife's mother's time-share. Wife has decorated the front room of the residence with family photographs. As mentioned above, Wife and Mr. Rasmussen express their love for each other multiple times per week. Although there is a full bathroom closer to Wife's room, she shares the master bathroom with Mr. Rasmussen and keeps all of her toiletries in there. Furthermore, Wife exercises on the treadmill located in Mr. Rasmussen's bedroom.

A court's finding of cohabitation "must be based upon evidence concerning the overall nature of the relationship, not merely a piecemeal consideration of individual factors. . . ." *Penrod v. Penrod*, 29 Va. App. 96, 101, 510 S.E.2d 244, 246 (1999). Based on the evidence in the present case, Husband has proven by clear and convincing evidence that Wife's relationship with Mr. Rasmussen constitutes cohabitation in a situation analogous to a marriage.

## C. *Unconscionability*

"[M]arital property settlements entered into by competent parties upon valid consideration for lawful purposes are favored in the law and such will be enforced unless their illegality is clear and certain." *Derby v. Derby*, 8 Va. App. 19, 25, 378 S.E.2d 74, 77 (1989) (quoting *Cooley v. Cooley*, 220 Va. 749, 752, 263 S.E.2d 49, 52 (1980)). Pursuant to Virginia Code § 20-109(A), if the spouse receiving support can prove by a preponderance of the evidence that termination would be unconscionable, support shall not terminate. "[U]nconscionability is . . . concerned with the intrinsic fairness of the terms of the agreement in relation to all attendant circumstances, including the relationship and duties between the parties." *Derby*, 8 Va. App. at 28, 378 S.E.2d at 78.

Wife has failed to prove that termination of Husband's spousal support obligation would be unconscionable. Wife currently has an income $34,000 per year, has a college degree from the University of North Carolina, and is a licensed massage therapist. Considering her college degree, Wife is arguably underemployed as a teacher's aide in the public school system. Furthermore, as a teacher's aide, Wife is given two months vacation during the summer, yet she has made no attempt to find work during these months. Wife submitted into evidence an Income and Expense statement showing that her monthly deficit is nearly $1,700. However. Wife's spending habits, a $12,000 Harley Davidson motorcycle, a $20,000 Corvette and a $68,000 piece of properly, belie the notion that she is living hand to mouth. Moreover, under her agreement with Mr. Rasmussen, Wife receives a bargain on rent and does not

pay for utilities. In other words, Wife has few living expenses. Although there is a disparity between the parties' incomes, this does not rise to unconscionability.

## D. *Attorney's Fees*

Husband has prevailed in this matter. His income greatly exceeds Wife's income. An award of attorney's fees is a hardship on Wife and is accordingly denied.

## *Conclusion*

Defendant's Motion to Terminate Spousal Support is granted.