COURT OF APPEALS OF VIRGINIA

Present:    Chief Judge Decker, Judges Beales and AtLee
Argued by teleconference

UNPUBLISHED

RICHARD AMOS TAYLOR

v.        Record No. 1197-19-3

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
JUDGE RICHARD Y. ATLEE, JR.
JULY 28, 2020

FROM THE CIRCUIT COURT OF ROANOKE COUNTY
Charles N. Dorsey, Judge

(Melvin L. Hill, on brief), for appellant.  Appellant submitting
on brief.

Rachel L. Yates, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.


Following a bench trial, the circuit court convicted appellant Richard Amos Taylor of

possession with intent to distribute an imitation controlled substance.  Taylor contends that the

evidence was insufficient to sustain his conviction because the substance did not meet the

statutory definition of an "imitation controlled substance" under Code § 18.2-247(B).  For the

following reasons, we affirm.

I. BACKGROUND

"On appeal of criminal convictions, we view the facts in the light most favorable to the

Commonwealth, and draw all reasonable inferences from those facts."  Payne v. Commonwealth,

65 Va. App. 194, 198 (2015).  So viewed, on September 3, 2017, Vinton Police Officer D.L.

Cox, acting undercover, arranged to purchase heroin from Taylor as part of a "buy and bust"

operation.  Taylor "boasted" to Cox over the phone about his heroin product, and claimed that it

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

was "raw," "came straight from New Jersey," and "did not contain any Fentanyl." Taylor agreed to meet Cox at a predetermined location and, when Taylor arrived in a car with two other persons, police removed all of them from the car. Taylor was seated in the rear driver's side seat. A search of the car revealed a knotted plastic baggie that contained an off-white substance from the seat pocket behind the driver's seat, in the immediate area where Taylor had been seated. While detained, Taylor explained to Cox that the baggie contained "Benefiber" and he had intended to mix it with cocaine (yet to be obtained from another dealer) and sell it to Cox. Upon further testing, the substance was confirmed to contain no meaningful quantity of any controlled substance, and according to expert testimony, "appeared to be something similar or that of like corn syrup solids such as baby formula."

Taylor argued that the substance recovered was not an "imitation controlled substance" under the statute because it fell under an exception set forth in Code § 18.2-247(B)(ii)(1) (referred to herein as the "introduction into commerce" exception). The circuit court rejected this argument, convicting Taylor of possession with intent to distribute an imitation controlled substance and sentencing him to five years' incarceration with three years and six months suspended. This appeal followed.

II. ANALYSIS

Under Code § 18.2-248(A), "it shall be unlawful for any person to manufacture, sell, give, distribute, or possess with intent to manufacture, sell, give or distribute a controlled substance or an imitation controlled substance."

Code § 18.2-247(B)(ii) defines an imitation controlled substance as follows:

> a pill, capsule, tablet, or substance in any form whatsoever which is not a controlled substance subject to abuse, and:
>
> (1) Which by overall dosage unit appearance, including color, shape, size, marking and packaging or by representations made,

would cause the likelihood that such a pill, capsule, tablet, or substance in any other form whatsoever will be mistaken for a controlled substance *unless such substance was introduced into commerce prior to the initial introduction into commerce of the controlled substance which it is alleged to imitate . . . .*

(Emphasis added.)   It is this final language that Taylor relies upon, arguing that "[t]he substance was introduced into commerce of [sic] the controlled substance which it is alleged to imitate."[1] We generously interpret this sentence to mean that Taylor believes that because the substance he possessed, corn syrup or baby formula, was introduced into commerce prior to heroin,[2] the substance he possessed with intent to distribute falls outside the definition of an imitation controlled substance under Code § 18.2-247(B)(ii).

Despite the numerous questions raised by the language of the "introduction into commerce" exception,[3] we need not resolve those here as Taylor wholly failed to meet his

---

[1] Under Rule 5A:20(e), an appellant's opening brief must contain "[t]he principles of law, the argument, and the authorities relating to each assignment of error."  Here, although Taylor's brief included principles of law and authorities, this single vague and ungrammatical sentence is the only presentation of his argument on brief, after which he concludes:  "Therefore, Taylor's conduct does not meet the elements of the statute."  This Court, "however, consider[s] whether any failure to strictly adhere to the requirements of Rule 5A:20(e) is insignificant, thus allowing the [C]ourt to address the merits of a question presented."  Jay v. Commonwealth, 275 Va. 510, 520 (2008).  Because we are able to understand Taylor's argument and address the merits despite the deficiencies of his brief and waiver of oral argument, we do not dismiss his appeal on Rule 5A:20(e) grounds.

[2] The statute is not explicit as to whether it refers to the time at which the imitation substance generally (*i.e.*, baby formula), or the specific substance at issue in the criminal act (*i.e.*, the baggie of baby formula Taylor possessed), was introduced into commerce.  In either scenario, as explained *infra*, Taylor has failed to meet his burden.

[3] The statute criminalizes four acts (as well as possession with intent to perform those acts):  "it shall be unlawful for any person to *manufacture, sell, give, [or] distribute*" an imitation controlled substance.  After lengthy consideration, we fail to see how this exception could protect anyone who "s[old], g[a]ve, or distribute[d]" an imitation controlled substance from criminal liability, as they would need to have possessed the intent to represent that the product was a controlled substance.  Absent this necessary *mens rea* — meaning an individual sold a legal substance, representing it to be that legal substance — such a defendant could plainly not

burden in qualifying for that exception. Code § 18.2-263 specifically provides that the

Commonwealth is not required to "negative any exception" contained in Code § 18.2-247.

Instead, the defendant bears the burden of proof. Id.; see also Werres v. Commonwealth, 19

Va. App. 744, 748 (1995) ("Code § 18.2-247(B) does not require that the Commonwealth prove

the identity of the imitation controlled substance."). Taylor introduced no evidence as to when

any substance at issue — heroin, corn syrup, or baby formula — was introduced into commerce

(either when they were brought to market or when he purchased the substance he possessed), and

accordingly, the circuit court had no evidence to support finding that the "introduction into

commerce" exception applied.

Code § 18.2-248 quite plainly criminalizes behavior like Taylor's. He possessed a

substance that resembled heroin, was packaged to resemble heroin, and he arranged to sell it as

heroin. Given Taylor's representations to the undercover police officer, and the circumstances of

the "buy and bust" operation, Taylor was properly found guilty and the "introduction into

commerce" exception is not applicable. Taylor arranged to sell a substance that was "not a

controlled substance subject to abuse" and the "color, shape, size, . . . packaging . . . [and]

representations made, would cause the likelihood that such a . . . substance . . . w[ould] be

---

be found guilty of selling an imitation controlled substance, because it was not "alleged to imitate" a controlled substance. It appears, therefore, that the legislature included the "introduction into commerce" exception to protect manufacturers of a legal substance who continue to manufacture it even after a controlled substance similar in appearance is introduced.

　　We recognize that these conjectures are *dicta* because Taylor failed to meet his burden of proof under *any* interpretation of the "introduction into commerce" exception. Thus, in addition to being in an unpublished memorandum opinion, this *dictum* does not "serve as a source of binding authority in American jurisprudence." Newman v. Newman, 42 Va. App. 557, 566 (2004) (quoting United States v. Pasquantino, 336 F.3d 321, 329 (4th Cir. 2003) (*en banc*)). We also recognize that "[t]he doctrine of judicial restraint dictates that we decide cases 'on the best and narrowest grounds available.'" Commonwealth v. White, 293 Va. 411, 419 (2017) (quoting Commonwealth v. Swann, 290 Va. 194, 196 (2015)). Consequently, these matters at this time remain unresolved.

mistaken for a controlled substance." Code § 18.2-247(B). Indeed, it is clear through both his words and actions that Taylor specifically intended that Cox believe he was purchasing heroin from Taylor. Accordingly, the circuit court did not err in convicting Taylor of possession with intent to distribute an imitation controlled substance.

III. CONCLUSION

Taylor failed to introduce any evidence of when any substance — imitation or illegal — was introduced into commerce, and thus failed to properly prove that the "introduction into commerce" exception applied. As such, the circuit court did not err in finding that the exception did not apply and thus convicting Taylor of possession with intent to distribute an imitation controlled substance.

Affirmed.